Argued September 9, affirmed October 8, 1963

# LIFT TRUCK PARTS & SERVICE, INC. *v.* BOURNE ET UX

385 P. 2d 735

*Leo Levenson,* Portland, argued the cause and submitted a brief for appellants.

*Edwin J. Welsh,* Portland, argued the cause and submitted a brief for respondent.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

GOODWIN, J.

Defendants Bourne appeal from a decree which enjoins them from conducting business under the assumed name of "Lift Parts Service of Oregon" or "any name so similar to Lift Truck Parts & Service, Inc., as to cause confusion."

The defendant Pacific Northwest Bell Telephone Company having agreed to abide by any decree of the court, the suit was dismissed as to it, and it took no part in this appeal.

The decree of the trial court is challenged on two points. First it is argued that the plaintiff's name, "Lift Truck Parts & Service, Inc.," is simply a description of a type of business with the symbol "Inc." added to it, and that it is incapable of acquiring a secondary meaning. Next the defendants argue that, even if the plaintiff's name is capable of acquiring a secondary meaning within the principles of law applicable to such cases, there is no competent evidence in the record that would tend to prove that it had acquired such a secondary meaning in the case at bar.

The facts are not substantially in dispute. The plaintiff corporation and the defendants as partners are presently competitors in the relatively specialized business of supplying parts and service for various makes and models of industrial lift trucks. The plaintiff corporation, which also sells and rents such equipment, was organized in 1956, and for three years thereafter employed the defendant Arthur Bourne in its business. In 1959 Arthur Bourne left the employ of the plaintiff and opened his own business under the name of "Art Bourne Lift Truck Service." In December 1961, Arthur Bourne and Kathleen Bourne filed a certificate pursuant to ORS 648.010 in which they adopted the assumed business name, "Lift Parts Service of Oregon."

The name "Lift Parts Service of Oregon" has appeared in some telephone directory listings immediately above the name "Lift Truck Parts and Service, Inc." There is evidence in the record from which the court found that the name assumed by the defendants was so similar to that of the plaintiff as to cause confusion in the trade, and that confusion in fact had been caused. The trial court also determined, by implication, if not expressly, that the plaintiff's corporate name was capable of acquiring a secondary meaning, and that it had acquired one within the relevant trade area. Accordingly, the court enjoined further use of the defendants' present business name, as well as the use of any name so similar to that of the plaintiff "as to cause confusion."

◼ Unlike most of their other competitors, neither the plaintiff nor the defendants have elected to use manufacturers' brand names in their own business names, but rather have elected to use words that are essentially synonymous with the kind of service they

offer. Accordingly, in this case, it is necessary to decide preliminarily whether such generic names can ever acquire a legally protectible secondary meaning. Despite the defendants' contentions to the contrary, an arrangement of purely generic or descriptive words can acquire a secondary meaning and thereby create a protectible interest in a trade name. See, e.g., *The 88¢ Stores, Inc. v. Martinez,* 227 Or 147, 152, 361 P2d 809 (1961), and cases collected in Annotation, 150 ALR 1067, 1095 (1944). However, where the name in question is one primarily composed of generic or descriptive words, it is much more difficult to prove a secondary meaning than in cases where the words used in the trade name have some distinctive or identifying character of their own. Restatement, 3 Torts, § 731, comment *e* at 602 (1938). *Cf.* 3 Callman, Unfair Competition and Trade-Marks, § 77.3 at 1237 (2d ed 1950).

■ In *The 88¢ Stores, Inc. v. Martinez,* supra, we noted that the burden of proof of secondary meaning is upon the party claiming the exclusive right to use generic or descriptive words as a trade name.

■ To acquire a secondary meaning, a business name must acquire a special significance to the purchasing public. As explained in the commentary to Restatement, 3 Torts, § 716, comment *b* at 560 (1938):

"Whether or not a designation has acquired this special significance is a question of fact in each case. No particular period of use is required. In some cases the special significance is not acquired even after an extended period of use; in others it is acquired after a brief period. The issue in each case is whether or not in fact a substantial number of present or prospective purchasers understand the designation, when used in connection with goods, services or a business, not

in its primary lexicographical sense, but as referring to a particular person or association * * *."

Or, as Judge Learned Hand put it, "[w]hat do the buyers understand by the word for whose use the parties are contending * * *?" *Bayer Co. v. United Drug Co.,* 272 F 505, 509 (SD NY 1921).

No one clear test has emerged in the case law as a certain and satisfactory method of showing secondary meaning. The courts tend to consider a number of evidentiary matters, including the degree to which confusion, if any, exists within the particular market, the length of use of the name, amount of advertising, and survey-reaction tests. See Annotation, 150 ALR supra at 1082 to 1095, and Comment, 47 Iowa L Rev 781 (1962).

4. In the case at bar, the plaintiff has based its proof of secondary meaning for the most part upon a survey poll conducted on its behalf by a private research company. Evidence concerning the poll came in virtually without objection. Recent literature in this field suggests that the trend is toward greater use of research techniques. See, e.g., *A. E. Staley Manufacturing Co. v. Staley Milling Co.,* 253 F2d 269, 278 (7th Cir 1958); *Standard Oil Company v. Standard Oil Company,* 252 F2d 65, 76 ALR2d 600 (10th Cir 1958); *Household Finance Corp. v. Federal F. Corp.,* 105 F Supp 164, 166 (D Ariz 1952); Bonynge, *Trademark Surveys and Techniques and Their Use in Litigation,* 48 ABAJ 329 (1962); Note, *Consumer Polls as Evidence in Unfair Trade Cases,* 20 Geo Wash L Rev 211 (1951); cases collected in Annotation, 76 ALR2d 619 (1961).

For the purposes of the survey, the class of inter-

viewees was properly made up of persons requiring service and parts for lift trucks. Approximately 20 per cent of the estimated potential market was interviewed. None of the questions was misleading, biased or phrased so as to "condition" the interviewees into desired responses. (Defendant objected to one of the questions on grounds that are not material here and present no issue on appeal.) While the interviewing technique and the questions used in the survey might have been improved by slight changes in wording and emphasis, the survey did establish the existence of secondary meaning.

The defendants object to the sufficiency of the evidence to prove secondary meaning because customers of the plaintiff were not called to testify concerning their views about the matters covered in the survey. This objection is adequately answered in Zeisel, *The Uniqueness of Survey Evidence,* 45 Cornell L Q 322, 337-339 (1960), where the author advances several "strong reasons against * * * [such] a general requirement for the acceptance of surveys." Cross-examination of selected interviewees can be misleading. Further, this proposed procedure would hamper future use of surveys by discouraging the public from participating for fear of a possible day in court. It is doubtful whether the answers of the interviewees in court would be more reliable than their original responses. 45 Cornell L Q at 336. But see Note, *Public Opinion Surveys as Evidence: The Pollsters Go to Court,* 66 Harv L Rev 498, 507, footnote 60 (1953). There is the further point, brought out on trial by the plaintiff, that a business is reluctant to hale its own customers into court and thereby run the risk of losing their business in the future. In the case at bar, the plaintiff did not rely exclusively upon

the results of its survey, but also produced relevant evidence concerning the length of time that the plaintiff had used its name, the volume of advertising that had been employed in connection with the plaintiff's name, and the relatively concentrated public with which the parties were dealing.

■ The issues before the trial court were essentially questions of fact. We have seen that a business name made up wholly of generic or descriptive words can, in some circumstances, acquire a secondary meaning. We have seen that the existence of such a secondary meaning can be proven by impartial surveys taken by persons trained in that field. The record in the case before us contains such proof. The questionnaire results tended to show that the potential customers identified the plaintiff's name with the plaintiff's corporate personality, rather than merely with the product. *Squeezit Corp. v. Plastic Dispensers,* 31 NJ Super 217, 224, 106 A2d 322 (App Div 1954). While this court must try this suit *de novo* upon the record (ORS 17.440), we agree with the trial court's finding that the plaintiff's trade name had acquired a legally protected meaning. See *Keller Products v. Rubber Linings Corp.,* 213 F2d 382, 385, 47 ALR2d 1108 (7th Cir 1954). There was also adequate proof of the likelihood of confusion.

■ The only remaining question is whether the decree is unnecessarily broad. We do not believe that it is. The defendants have nothing to fear from the operation of the injunction so long as they refrain from arranging the generic words in their trade name in a manner so similar to that of the plaintiff as to create confusion. Whether the defendants solve their problem by reverting to a usage which the record

shows was formerly employed by them, or by some other arrangement of words that will avoid confusion, they have a relatively broad range of freedom within which to select a suitable name.

The decree is affirmed.