Argued March 31, affirmed as modified May 30, opinion
withdrawn, mandate stayed, affirmed as modified August 7,
motion to clarify opinion denied August 25, 1975

FROSTIG, *Appellants, v.* SAGA ENTERPRISES,
INC., ET AL, *Respondents and Cross-Appellants.*

539 P2d 154

*Ted E. Runstein* of Kell, Alterman, Runstein & Thomas, Portland, argued the cause and filed briefs for appellants. With them on the briefs was Bonnie Bailey Allen, Portland.

*James F. Mitchell* of Eckhoff, Hoppe, Slick, Mitchell & Anderson of San Francisco, California, argued the cause for respondents and cross-appellants. With them on the briefs was J. W. Rosacker, Portland.

O'CONNELL, C. J.

Plaintiffs, owners and operators of the "Black Angus Steakhouse" in Portland, Oregon, seek to enjoin defendants from using the name "Stuart Anderson's Black Angus Restaurant" and "Black Angus" within the Portland, Salem and Eugene, Oregon market areas. The trial court enjoined defendants from using the name "Black Angus" on any restaurant, building or operation in Multnomah County, from using the name "Black Angus" unaccompanied by "Stuart Anderson's" in advertising within Multnomah County, and from listing their name under "T" (for "The") or "B" (for "Black Angus") in the Portland telephone book. Plaintiffs appeal, asserting that the injunction granted offers inadequate protection to their trade name. Defendants cross-appeal, asserting that the injunction is unwarranted.

Plaintiffs' predecessors in interest began restaurant operations under the name "Black Angus Steakhouse" on S.E. 122nd Avenue in Portland, Oregon in May of 1964.[1] The name has been in substantially continuous use since that time. Plaintiffs purchased the restaurant in 1970 and have continued to advertise and promote the business under the name Black Angus Steakhouse.

Stuart Anderson, defendants' predecessor, opened the first "Stuart Anderson's Black Angus Restaurant" in Seattle, Washington in March of 1964. From 1964 through 1971, Mr. Anderson established similar restaurants in various cities in Washington and California.[2] In September of 1971, he filed articles of incorporation for Stuart Anderson's Black Angus Restaurant of Oregon, Inc., and registered "Stuart An-

---

[1] The name was registered in 1965.

[2] By the time of trial, defendants owned restaurants in Washington, Oregon, California, Nevada, Idaho and British Columbia.

derson's Black Angus Restaurant" as a service mark and assumed business name. These filings were accepted by the Corporation Commissioner only after assurances that the words "Stuart Anderson's" would always precede "Black Angus" in order to avoid confusion with plaintiffs' use of "Black Angus."

Defendant Saga Enterprises, Inc., purchased Stuart Anderson's chain in 1972. On October 15, 1971, defendant opened a restaurant in Eugene, Oregon. In September, 1972, plaintiffs learned that defendant was planning to open a restaurant in Beaverton, Oregon. This suit was filed in January of 1973, before substantial advertising expenditures had been made or signs had been installed in connection with the Beaverton restaurant. In August, 1973, defendants opened a restaurant in Salem and at the time of trial were planning another restaurant in Milwaukie, Oregon.

Plaintiffs assert that they have acquired a protectible interest in the name "Black Angus" under both the common law of unfair competition and under ORS 647.107, which provides as follows:

> "Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under ORS 647.015, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

Defendant contends that plaintiffs have failed to establish that "Black Angus Steakhouse" acquired a secondary meaning or that defendant's use of "Black Angus" as a part of the name for its restaurant resulted in customer confusion, both of which requirements are essential to a cause of action under the common law of unfair competition. Defendant further

contends that ORS 647.107 is not properly applicable to suits between competitors.[3] Because we find that plaintiffs have made out a case sufficient to entitle them to relief under the common law theory of unfair competition, we need not determine whether ORS 647.107 was intended to have the limited scope which defendant contends it has.

■ To be entitled to relief, plaintiffs must establish that the words "Black Angus" used as a part of the name of their restaurant acquired a secondary meaning. To meet this burden, plaintiffs must prove that name acquired a special significance to the public so that a substantial number of present or prospective patrons of plaintiffs' restaurant understand the designation when used in connection with its business "not in its primary lexicographical sense, but as referring to a particular person or association." 3 Restatement of Torts § 716, comment *b*, p. 560 (1938). Thus, plaintiffs have the burden of proving that "Black Angus" has come to signify their establishment and its product to a significant segment of restaurant patrons in the Portland market and that defendant's name is sufficiently similar to cause confusion in the minds of such persons, as a result of which plaintiffs suffer a business loss.[4]

■ To establish this secondary meaning, plaintiffs produced evidence of advertising through the installation of prominent signs at their location on one of Portland's busiest intersections; advertising through newspapers, radio and television; and at one time advertising through the "Dine-Out" plan under which subscribing customers are allowed to purchase two

[3] Defendant's position is supported by Derenberg, The Problem of Trademark Dilution and Antidilution Statutes, 44 Calif L Rev 439 (1956).

[4] *See,* Lift Truck, Inc. v. Bourne, 235 Or 446, 449, 385 P2d 735 (1963); The 88¢ Stores, Inc. v. Martinez, 227 Or 147, 152-153, 361 P2d 809 (1961).

meals for the price of one. The record indicates that plaintiffs' various advertising efforts were successful. Several witnesses testified that they assumed that the opening of defendant's restaurant in Beaverton was an expansion of plaintiffs' establishment. A columnist for The Oregon Journal, covering restaurant activities in Portland, testified that by 1970 plaintiffs' restaurant had attained a general reputation for good food in the greater Portland area. Several witnesses testified that plaintiffs' restaurant is often referred to as "The Black Angus." By the foregoing evidence, plaintiffs met their burden of showing that the name "The Black Angus" has been identified in the minds of a significant number of those who patronize Portland area restaurants with plaintiffs' restaurant.

■ We turn, then, to the question of whether defendant's name, "Stuart Anderson's Black Angus Restaurant," is sufficiently similar to "Black Angus" to cause customer confusion. Plaintiffs rely on the testimony of various witnesses who had gone to defendant's Beaverton restaurant in the belief that it was connected with plaintiffs' establishment. In addition to this direct evidence of customer confusion, plaintiffs also introduced evidence of confusion on the part of persons who were not customers, including taxi drivers, creditors, prospective employees of defendant and telephone operators. Although these later incidents of confusion do not themselves fall within the sort of confusion against which the common law has traditionally offered protection,[9] they are, nonetheless, relevant circumstantial evidence of the confusing similarity of the parties' names.

■ Despite the evidence of actual confusion in the mind of a significant segment of the public, defendant asserts that the names are dissimilar as a mat-

[9] Duniway Pub. Co. v. N.W. Prt'g. Co., 11 Or 322, 8 P 283 (1884).

ter of law. We do not agree with this proposition.[6] When actual confusion is proved, as it was in this case, it is inappropriate for a court to rule as a matter of law that the names are nonetheless dissimilar. Even if we were to accept defendant's assertion that our cases[7] support the practice of determining similarity without resort to evidence on the question, we would hold in the present case that "Stuart Anderson's Black Angus Restaurant" and "The Black Angus Steakhouse" are sufficiently similar to cause confusion.

Defendant further contends that the Corporation

[6] *See* Umpqua B.Exch. v. Um-Qua V.B. Growers, 117 Or 678, 685, 245 P 324 (1926). Nims, Unfair Competition § 98 (2d ed 1947).

[7] The cases defendant cites for the proposition that similarity of name is a question of law are, for the most part, distinguishable. In Duniway Pub. Co. v. N.W. Prt'g. Co., 11 Or 322, 8 P 283 (1884) there was no evidence that anyone mistook the "Northwest News" for "New Northwest." In Umpqua B.Exch. v. Um-Qua V.B. Growers, 117 Or 678, 245 P 324 (1926) the defendant's predecessor had appropriated the name Um-Qua before plaintiff was established. Plaintiff's name in Federal Secur. Co. v. Federal Secur. Corp., 129 Or 375, 276 P 1100, 66 ALR 934 (1929) had not acquired a secondary meaning and was not entitled to protection despite the near identity of defendant's name. In Liquidators v. Clifton, 132 Or 448, 286 P 152 (1930) the similarity of "Liquidators" and "Bonded Liquidator Co.," was descriptive of the services offered. The same was true of the 88¢ store appellation in The 88¢ Stores, Inc. v. Martinez, 227 Or 147, 361 P2d 809 (1961).

Only in Lichtenstein v. Mellis, 8 Or 464, 34 Am Rep 592 (1880) did the court hold that a demurrer to plaintiff's complaint was proper. In that case the names in question were "I X L General Merchandise Auction Store" and "Great I X L Auction Co." The court held that I X L enjoyed such widespread use that it was not susceptible to appropriation by plaintiff. Defendant seeks to bring "Black Angus" within the rule of *Lichtenstein* by showing the use of the phrase in the names of a number of beef related enterprises throughout the nation. None of these enterprises, however, participate in the Oregon or national market as "I X L" apparently did in 1880. The use of the phrase "Black Angus" in local business in Nashville or Butte does not render it impossible for plaintiffs to develop a secondary meaning for their name which is entitled to protection.

Commissioner's registration of the name "Stuart Anderson's Black Angus Restaurant" conclusively establishes that its name is distinct from plaintiffs' trade name because ORS 647.035 prohibits the registration of a trade name which

"(5) Consists of or comprises a mark which so resembles * * * a mark or trade name previously used in this state by another and not abandoned, as to be likely, when applied to the goods or services of the applicant, to cause confusion or mistake or to deceive; or

"(6) Is the same as, or deceptively similar to, any corporate, limited partnership, reserved or registered name currently on file with the Corporation Commissioner * * * or an assumed business name registered as provided in ORS 648.010 * * *."

■ The Corporation Commissioner's determination of such matters, however, is not conclusive; it merely constitutes prima facie evidence of the validity of registration. This is made clear in ORS 647.045(3), which provides:

"(3) Any certificate of registration issued by the Corporation Commissioner under this chapter, or a copy thereof duly certified by the Corporation Commissioner, shall be prima facie evidence in any action or judicial proceeding in any court of this state of:

"(a) The validity of the registration of the mark.

"(b) Registrant's ownership of the mark.

"(c) Registrant's exclusive right to use the mark in trade within the state in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated therein."

■ Plaintiffs have shown that defendant's name has caused customer confusion resulting in loss of

trade and, therefore, have rebutted the prima facie showing of defendant's right raised by the registration of its name. We hold, therefore, that the trial court did not err in finding that the use of defendant's name within plaintiffs' market area constituted unfair competition which should be enjoined.[8]

The final question for decision is the proper geographic scope of the injunction. Plaintiffs contend that their market area should include the Portland metropolitan area of Multnomah, Clackamas, and Washington Counties, and the cities of Salem and Eugene. Defendant contends that the applicable market area includes no more than Multnomah County east of the Willamette River. The trial court enjoined defendant from using "Black Angus" in connection with a restaurant "actually located within Multnomah County."

The evidence shows that plaintiffs have advertised and promoted their restaurant throughout a metropolitan area which extends beyond the borders of Multnomah County. Several of those who testified as to their confusion of plaintiffs' and defendant's names were residents of the Washington County suburban area. They had been plaintiffs' customers with varying degrees of regularity. Other witnesses testified that they knew residents of various Portland suburbs who patronized plaintiffs' restaurant. The only connection with Eugene and Salem indicated was plaintiffs' "dream" to expand his restaurant operations someday into those market areas.

■ There was no evidence that plaintiffs had any prospect of making this dream a reality within the

---

[8] Defendant also contends that plaintiffs come into court with unclean hands and should be denied relief because of various advertising practices and attempts to establish themselves in Beaverton. It is sufficient to say that the record does not support this contention.

foreseeable future. Therefore, we deny plaintiffs' prayer for an injunction restraining defendant from using the name "Black Angus" in the cities of Salem and Eugene. This is in accord with the disposition of the case by the trial court.

■ The trial court, however, limited the operation of the injunction to Multnomah County. We find this to be too restrictive. Both from the evidence of record and from facts of common knowledge of which we may take notice, it is apparent that the boundaries of Multnomah County have no economic significance in marking the market area from which plaintiffs draw their customers. As we have indicated above, this market area covers substantial portions of Washington County as well as Multnomah County. This market area also embraces a substantial part of Clackamas County. There is no basis in the record to support defendant's contention that those who desire restaurant service of the kind available from plaintiffs restrict their choice to Multnomah County within this large metropolitan area covering substantial parts of all three counties.

Because the boundaries of economic activity are indistinct, the designation of the precise boundaries of the area for purposes of the injunction is necessarily somewhat arbitrary. It is important, however, to the business decisions of both parties to make the scope of the injunction as precise as possible. In this situation, we think the commonly accepted definition of metropolitan Portland as including the tri-county area employed by other governmental agencies concerned with the area as an economic unit[9] best balances the interests of fairness, practicality and definiteness in the present case.

---

[9] *See*, for example, the Tri-Met Transit District authorized by ORS 267.100 to include all territory within the boundaries of every Oregon county in the metropolitan area.

We hold, therefore, that defendant is enjoined from using the phrase "Black Angus" alone or in combination with other words, including "Stuart Anderson's" in connection with any business carried on within Multnomah, Clackamas or Washington Counties.

Affirmed as modified.