Argued and submitted April 25, affirmed July 21, 1980

# WESTERN BANK,
## *Respondent,*
### *v.*
# WESTERN BANCORPORATION, et al,
## *Appellants.*
## (No. 78-681, CA 13903)
### 617 P2d 258

J. Pierre Kolisch, Portland, argued the cause for appellants. With him on the briefs were Alan T. McCollom and Kolisch, Hartwell, Dickinson & Stuart, Portland, and Chandler, Walberg & Stokes Coos Bay.

William A. McDaniel, Coos Bay, argued the cause for respondent. With him on the brief was Foss, Whitty & Roess, Coos Bay.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

RICHARDSON, P.J.

## RICHARDSON, P.J.

Plaintiff is an Oregon banking corporation which, since 1960, has done business under the name "Western Bank." It operates 34 branch banks which are located in various parts of the state. The most concentrated area of its operations is the western coastal region. None of plaintiff's branches are located in the Portland or Willamette Valley areas.

Defendant Western Bancorporation is a bank holding company, with principal offices in California. It owns virtually all of the stock of defendant First National Bank of Oregon. First National Bank operates branches throughout the state. In October, 1977, defendants registered the mark "Western Bancard" with the Oregon Corporation Commissioner pursuant to ORS chapter 647. They intended to use that mark on a bank card to be marketed throughout the state.[1]

Plaintiff brought this suit to enjoin defendants from advertising or using the mark in the state of Oregon. Plaintiff alleges, *inter alia,* that the name "Western Bancard" is deceptively similar to the name "Western Bank." Plaintiff contends that it enjoys a protectible interest in the latter name under principles of the common law of unfair competition and that that interest would be injured by defendants' use

---

[1] Defendants prepared the following specimen of the card:

 FIRST NATIONAL BANK OF OREGON
A Western Bancorporation bank

GOOD THRU

of the name "Western Bancard."[2] The trial court granted plaintiff the relief sought, and defendants appeal. We affirm.

Defendants' various arguments on appeal are divisible into two categories: first, that plaintiff proved no protectible interest in the name "Western Bank" which would be injured by defendants' contemplated use of the name "Western Bancard"; and second, that the parties stipulated that any injunctive relief afforded by the trial court should be statewide, that plaintiff did not prove that its interest in and use of the name "Western Bank" is statewide, and that plaintiff is therefore entitled to no relief.

### PROOF OF PROTECTIBLE INTEREST
### AND ENJOINABLE INJURY

Because the words "Western Bank" are geographically descriptive words, to prove a protectible interest in the name plaintiff first had to establish that the name carries a "secondary meaning," independent of the ordinary meaning of the words comprising it, which identifies the name with plaintiff among a substantial number of plaintiff's customers or prospective customers. *Frostig v. Saga Enterprises, Inc.,* 272 Or 565, 570, 539 P2d 154 (1975). In addition to proving a secondary meaning, plaintiff was also required, as a prerequisite to injunctive relief, to prove that the mark defendants propose to use "is likely to cause confusion of source in the market." *The 88¢ Stores, Inc. v. Martinez,* 227 Or 147, 153, 361 P2d 809 (1961); *see also Frostig v. Saga Enterprises, Inc., supra,* 272 Or at 570.

The principal evidence in this case consisted of the results of professional surveys commissioned by the parties. Plaintiff's survey was conducted by telephone among persons in areas where plaintiff's

---

[2] Plaintiff also contends that defendants' use of the name "Western Bancard" would violate ORS 647.107, Oregon's "antidilution statute." Because we base our decision on the common law contention, we do not reach the statutory argument.

branches are located. The most relevant questions in the survey, in our view, were questions 5 and 7. In question 5, interviewees were asked:

> "As I mention the following financial institution services, please tell me which one financial institution in your community comes to mind first.
> "Master Charge
> "VISA
> "Western Banclub
> "The Only Account
> "Western Bancard, spelled B-A-N-C-A-R-D
> "Execuline
> "Western Bankcard, spelled B-A-N-K-C-A-R-D
> "Pacific Northwest Card"

Question 7, in relevant part, was:

> "Let's assume a new banking service called Western Bancard is introduced into your community.
> "* * * * *
> "Which one financial institution in your community would you expect to offer the Western Bancard service?"

In response to question five, 64 percent of those surveyed associated "Western Bancard, spelled B-A-N-C-A-R-D" with plaintiff. (Seventy-two percent made an association between Western Bank and "Western Bankcard, spelled B-A-N-K-C-A-R-D.") On the seventh question, 68.5 percent of the interviewees answered that they would expect Western Bank to be the bank in their community offering "a new banking service called Western Bancard."

Defendants conducted two surveys, one statewide and one limited to areas where Western Bank branches are located. The second survey was in turn divided into "Primary Western Areas" and "All Western Areas." The most significant question in defendants' surveys reads as follows (including instructions to the interviewer):

> "Now, here is a card which may be issued soon. As you can see it is called 'WESTERN BAN CARD.' Will

you please look at it for a moment? Here is the front (EXPOSE FOR 10 SECONDS) — and here is the back (EXPOSE FOR 10 SECONDS). (INT: NOW, CONCEAL CARD IN YOUR HAND AND ASK: With which bank, if any, would you associate this card?"[3]

The interviewees were shown a card with the words "First National Bank of Oregon" and that bank's logo upright and in the top left corner, while the words "Western Bancard" appeared sideways and to the right. Notwithstanding that visual arrangement, 24 percent of the interviewees in the "Primary Western Area" and 20 percent in "All Western Areas" associated the card with Western Bank, compared with 63 percent and 61 percent, respectively, who associated the card with First National Bank.[4]

In sum, both parties' surveys in plaintiff's market areas show a high level of confusion of the "Western Bancard" mark with the name "Western Bank."[5]

■    The survey evidence is probative both of plaintiff's secondary meaning in the name "Western Bank" and of confusion of defendants' mark with plaintiff's name in plaintiff's market areas. In addition to the survey evidence, plaintiff's proof of secondary meaning included evidence of the length of time the name "Western Bank" had been used by it and evidence of substantial and regular advertising expenses. *See Lift Truck, Inc. v. Bourne,* 235 Or 446, 450, 385 P2d 735 (1963).

_____

[3] The card the interviewer showed the interviewee was in the form shown at 47 Or App 193, n 1, *supra.*

[4] Interviewees were also shown a specimen newspaper advertisement, which they viewed for a 30 second period, and were then asked: "With which bank, if any, do you associate the card shown in the advertisement?" The confusion factor was substantially less than with the card. Seven percent of the interviewees in the "Primary Western Area" and four percent of those in "All Western Areas" answered "Western Bank."

[5] Defendants' statewide survey shows some confusion, albeit not a significant amount.

■ Defendants argue that plaintiff's survey evidence is unpersuasive and should be rejected by us on *de novo* review. Defendants advance a number of bases for this argument, principal among which is their assertion that the questions in plaintiff's survey "preconditioned" the interviewees to answer that they associated the name "Western Bancard" with "Western Bank." Defendants state:

"In the instant case question 5 of plaintiff's survey was:

"As I mention the following financial institution services, please tell me which one financial institution *in your community* comes to mind first. (emphasis added)

"The following names were then read:
"Mastercharge
"VISA
"Western Banclub
"The Only Account
"Western Bancard, spelled B-A-N-C-A-R-D
"Execuline
"Western Bankcard, spelled B-A-N-K-C-A-R-D
"Pacific Northwest Card

"Of the eight names mentioned, three — 'Western Banclub', 'Western Bancard' and 'Western Bankcard' — include plaintiff's name, Western Bank, so that when the jack pot question, question 7, was asked:

"Which one financial institution *in your community* would you expect to offer the Western Bancard service? (emphasis added)

"the interviewee had been preconditioned to the name 'Western Bank'. "

In our view, it was defendants' mark rather than the ordering of the questions which caused the interviewees to answer as they did. Only one of the names mentioned before the fifth contained the word "Western." The fact that that word appeared in the earlier mentioned name had little predisposing potential; the word is as much a part of "Western Bancard" as it is of "Western Bank."

■ Defendants also attack the reliability of the survey because, unlike their own, it was conducted by telephone rather than by personal interviews in which a specimen card and advertisement were shown to the interviewees. We disagree. Confusion can be manifested aurally as well as visually. Moreover, defendants have not marketed or advertised a card with the "Western Bancard" mark on it. The specimen they used in their own surveys was produced for the occasion (and for other purposes related to this litigation). Plaintiff was not required to base its survey on a speculation regarding the format — or the likelihood of the use or continued use of any specimen format — of the card and advertising defendants contemplated.

■ In addition to their challenges to the reliability of plaintiff's survey evidence, defendants make a number of other arguments which bear on whether plaintiff proved secondary meaning and a likelihood of confusion of defendants' mark with plaintiff's business name in plaintiff's market areas. Defendants argue, for example, that a plaintiff's threshhold of proof is extremely high where, as here, the business name in which a protectible interest is claimed is comprised of generic descriptive and geographic words (*see Lift Truck, Inc. v. Bourne, supra* ); that in certain other jurisdictions, it has been held that a protectible interest in bank names can almost never be established; that defendants registered the mark "Western Bancard" with the Corporation Commissioner and therefore have a presumptive right to its exclusive use under ORS 647.045(3) (*but see Frostig v. Saga Enterprises, Inc., supra,* 272 Or at 573-74); and that other banks in Oregon do business under names which include the word "Western." Stripped to their essentials, all of these arguments go to the weight of the evidence. Based on plaintiff's survey, defendants' survey of plaintiff's market areas, and the other evidence, we agree with the trial court that plaintiff proved secondary meaning and likelihood of confusion in the markets where plaintiff now operates.

[198]

## EFFECT OF STIPULATION AND SCOPE OF INJUNCTIVE RELIEF

Defendants state, correctly, that plaintiff did not prove that it had acquired secondary meaning in the name "Western Bank" in the Portland or Willamette Valley areas. Defendants argue that, because the parties stipulated in court that any injunction should be statewide rather than local and because plaintiff did not prove that secondary meaning and likelihood of confusion exist throughout the state, plaintiff is not entitled to a statewide injunction or to a local injunction. Plaintiff agrees that the parties stipulated that a statewide injunction was the only relief they wished the court to consider. However, plaintiff's understanding of the stipulation is the converse of defendants' — to wit, that proof of secondary meaning and confusion in local markets would be grounds for a statewide injunction.

■ It is of course clear that, generally, injunctive relief in cases involving use of business names can be limited to the specific local markets where a protectible and threatened interest exists. *See Frostig v. Saga Enterprises, Inc., supra; Lift Truck, Inc. v. Bourne, supra.* The questions here are, first, what effect, if any, the parties' stipulation had on the court's authority to determine the territorial scope of the injunction; and second, depending on the answer to the first question, what the territorial scope of the injunction should be.

■ The stipulation, if such it was, was oral. The parties do not agree what they stipulated to, and the language of counsel in the trial court does not support either of their understandings better than the other. Moreover, it is highly questionable whether a court of equity can be limited in the injunctive relief it allows by a stipulation of the kind involved — especially when, as here, the stipulation was made before evidence was presented. *Cf. State ex rel. v. Funk,* 105 Or 134, 155-56, 199 P 592, 209 P 113, 25 ALR 625 (1922).

[199]

■ Be all of that as it may, we disagree with the central proposition in defendants' analysis of what the stipulation *could* mean: it does not follow from any agreement of the parties that only statewide relief was appropriate that plaintiff was required to prove secondary meaning and likelihood of confusion everywhere in the state *if* defendants' use of the mark in other parts of the state is likely to foster confusion in the market areas where plaintiff has acquired a protectible interest in its business name.

■ We find that that likelihood exists. A senior vice-president of First National Bank testified that the card bearing the "Western Bancard" mark would be introduced through an extensive newspaper, radio and television promotional campaign. Plaintiff established that Portland and Eugene newspapers and television channels are disseminated and received in plaintiff's principal market areas. A statewide injunction is appropriate.

Affirmed.