Argued and submitted June 19, affirmed August 3, 1981

# WOODBURN CONSTRUCTION CO.,
## dba Estates Realty,
### *Respondent,*
#### *v.*
# GENERAL DEVELOPMENT CO. et al,
### *Appellants.*

(No. 118039, CA 18907)

632 P2d 23

Daniel J. Van Dyke, Woodburn, argued the cause for appellants. With him on the briefs was Peterson & Van Dyke, Woodburn.

Michael C. McClinton, Salem, argued the cause for respondent. With him on the brief was Clark, Marsh & Lindauer, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

### RICHARDSON, P. J.

Plaintiff has been engaged since 1971 in the business of selling real estate under the assumed business name "Estates Realty." It seeks to enjoin defendants from using the business name "Senior Estates Realty" in or near the city of Woodburn. The trial court granted that relief to plaintiff,[1] and defendants appeal. We review de novo and affirm.

Plaintiff participated in the construction of homes and other aspects of the development of a retirement community known as Woodburn Senior Estates Development (development). In 1971, plaintiff formed "Estates Realty" to sell homes and lots in the development. The name "Estates Realty" was registered with the Corporation Commissioner pursuant to ORS ch 648. Defendant Peterson had registered the name "Senior Estates Realty" with the Commissioner in 1968, but defendants did not begin using that name in a real estate business until 1980. Plaintiff's and defendants' offices are both located proximately to the development. Plaintiff has exclusive rights on all new home sales in the development but the parties compete for "re-sales."

Defendants contend that the name "Estates Realty" consists of generic or descriptive words and that plaintiff was therefore required and failed to prove, first, that the name had acquired "secondary meaning," and, second, that there was a likelihood of "confusion of source" among customers or potential customers of plaintiff resulting from defendants' use of the name "Senior Estates Realty." *See Western Bank v. Western Bancorp.,* 47 Or App 191, 194, 617 P2d 258 (1980), and authorities cited therein. Defendants also argue that, because their assumed business name was registered before plaintiff's was and because plaintiff was aware that defendants' name was registered but took no action to cancel the registration for nonuse, ORS 648.050, plaintiff is estopped from bringing this suit and comes into equity with unclean hands.

---

[1] The decree also enjoins defendants from using the name "Woodburn Senior Estates Realty." Although our discussion will refer only to the injunction against the use of the name "Senior Estates Realty," it applies equally to the injunction against the use of defendants' alternative name.

■■ Proof of secondary meaning requires a showing by the plaintiff that its business name has "acquired a special significance to the public so that a substantial number of present or prospective patrons * * * understand the designation when used in connection with its business 'not in its primary lexicographical sense, but as referring to a particular person or association.'" *Frostig v. Saga Enterprises, Inc.,* 272 Or 565, 570, 539 P2d 154 (1975). The evidence here was that plaintiff had spent substantial amounts for advertising over an extended period of time, that the market for which plaintiff and defendants compete is small, that plaintiff has a good business reputation in the community and that a large percentage of plaintiff's resale business is derived from referrals by persons living in the development community. We agree with the trial court's finding that plaintiff's business name has acquired a secondary meaning. *See Frostig v. Saga Enterprises, Inc., supra; Lift Truck, Inc. v. Bourne,* 235 Or 446, 385 P2d 735 (1963); *Western Bank v. Western Bancorp., supra.*

■ We conclude that "confusion of source" was also proved by plaintiff. The Supreme Court stated in *The 88¢ Stores, Inc. v. Martinez,* 227 Or 147, 361 P2d 809 (1961):

> "If a name acquires a secondary meaning, the originator of the name is entitled to exclude use of it by others to the extent that the imitator's use causes or is likely to cause confusion of source in the market. 3 Restatement, Torts, Ch 35 (1938). Confusion of source results if the imitator's use of the name misleads present or prospective purchasers into believing that the imitator's goods or services are in fact those of the originator of the trade name * * *." 227 Or at 153.

Plaintiff adduced ample testimony by persons who had experienced confusion between the two businesses or who had witnessed confusion in others.[2] Defendants argue, however, that none of plaintiff's witnesses were customers or prospective customers and that plaintiff therefore failed to prove a likelihood of confusion of source in the relevant

---

[2] We ascribe little weight to the testimony of plaintiff's "expert witnesses" who testified to the general effect that they expected confusion to occur. Their opinions were based primarily on a comparison of the two assumed business names. The testimony added little to what the fact finder could determine from a similar comparison.

market. Assuming *arguendo* that *none* of the witnesses were *prospective* customers, we nevertheless reject defendants' argument. The court stated in *Frostig v. Saga Enterprises, Inc., supra:*

> "* * * Plaintiffs rely on the testimony of various witnesses who had gone to defendant's Beaverton restaurant in the belief that it was connected with plaintiffs' establishment. In addition to this direct evidence of customer confusion, plaintiffs also introduced evidence of confusion on the part of persons who were not customers, including taxi drivers, creditors, prospective employees of defendant and telephone operators. Although these later incidents of confusion do not themselves fall within the sort of confusion against which the common law has traditionally offered protection, they are, nonetheless, relevant circumstantial evidence of the confusing similarity of the parties' names." (Footnote omitted.) 272 Or at 571.

The testimony here is comparably persuasive as circumstantial evidence of confusing similarity of the parties' names.

■ Defendants' estoppel and unclean hands arguments rest on the premise that the registration of their assumed business name prior to the time plaintiff registered its name is relevant in itself to the issue in this case. In *Western Bank v. Western Bancorp., supra,* the defendant's mark was registered pursuant to ORS ch 647, and we nevertheless affirmed the injunction against its use of that mark. 47 Or App at 198; *see also, Frostig v. Saga Enterprises, Inc., supra,* 272 Or at 572-73. Defendants concede that they did not begin doing business under their assumed business name for approximately 12 years after its registration and approximately nine years after plaintiff registered and began doing business under its assumed name. ORS 648.025 provides as relevant:

> "(1) Within 60 days after any one of the following events occurs with respect to a registered assumed business name, a verified application for amendment or cancellation of the registration shall be filed with the Corporation Commissioner and shall in cases of amendment contain the information required under subsection (2) of ORS 648.010:
>
> "* * * * *

"(b) The use of the assumed business name is discontinued; * * *

"* * * * *

"(2) The application required by subsection (1) of this section shall be filed by the person or persons required to register an assumed business name * * *."

If anyone here is estopped or comes to equity with unclean hands, it is not plaintiff.

Affirmed.