Alex GEORGE, d/b/a High Country Club, Plaintiff and Appellant,

v.

H.S. PETERSON, d/b/a High Country Inn Restaurant, d/b/a Peterson Realty Company, Defendant and Respondent.

No. 18285.

Supreme Court of Utah.

Oct. 5, 1983.

---

Pete N. Vlahos, Ogden, for plaintiff and appellant.

Robert E. Froerer, Ogden, for defendant and respondent.

STEWART, Justice:

This is an appeal in a trade name infringement suit. The plaintiff, Alex

George d/b/a High Country Club and High Country Restaurant, brought the suit to enjoin the defendant, H.S. Peterson d/b/a High Country Inn Restaurant, from using the words "High Country" in its name. After a trial on the merits, the trial court dismissed the suit because plaintiff had failed to carry its burden in showing that it had a protectible right in the disputed name. We affirm.

Plaintiff's business is a combination tavern/restaurant which he opened in January, 1977 at 772 Wall Avenue in Ogden, Utah. The business was originally only a tavern, which he named the "High Country Club." The restaurant operation was leased to another person. The plaintiff filed the name "High Country Club" as a d/b/a with the Secretary of State on January 7, 1977.[1] In 1980 plaintiff took over the restaurant operation, and obtained a license from Ogden City to do business as a private club which would prepare, sell and serve food. He also named the restaurant "High Country." Since 1981 both plaintiff's businesses have been listed in the telephone book; previous to that, only the "High Country Club" was listed.

Defendant's use of the words "High Country" began in August, 1977 in Heber City, Utah. Originally, defendant operated a motel under the name "Stardust Inn," but then filed a d/b/a with the Secretary of State to change the name to "High Country Inn."

In 1978 defendant made plans to build a second motel, also named "High Country Inn," in Ogden at 1307 West Twelfth Street, not far from plaintiff's "High Country Club." Before construction began, defendant placed signs on the construction site which read "the Future Site of the High Country Inn." The motel was opened October 5, 1979 and listed in the 1980 phone book.

In March, 1980 defendant opened a restaurant adjoining the motel. The restaurant is listed in the telephone directory as the "High Country Inn Restaurant" and in the Yellow Pages as "Moore's High Country Inn Restaurant." Defendant filed a d/b/a with the Secretary of State on April 28, 1980, which registered the name as "High Country Inn Restaurant."

Not surprisingly, some confusion resulted from the similarity in the names of the two restaurants. Plaintiff has experienced numerous instances where persons order takeout food and then do not appear to purchase it. On several occasions a banquet or large dinner was scheduled, but the scheduled group never arrived. Plaintiff had had no problems like this before defendant's restaurant opened. Also, plaintiff has received deliveries of bedsheets and glassware intended for defendant's inn and restaurant. Plaintiff estimates his damages due to misplaced orders in the thousands of dollars.

In August, 1980 plaintiff filed this lawsuit, requesting compensatory and punitive damages and seeking to enjoin defendant from using the name "High Country Inn Restaurant" or any name deceptively similar to "High Country Club." After a trial on the merits, the trial court ruled that the name "High Country" is a geographic name, not a coined phrase; that therefore the plaintiff had the burden of proving that the name has a secondary meaning; and that plaintiff had failed to carry this burden. Accordingly, he entered judgment for the defendant.

"Secondary meaning" is a common-law trademark doctrine that applies to words which ordinarily are not entitled to protection because they are commonly used in everyday speech and thus belong in the public domain. *Budget System, Inc. v.*

1. Plaintiff did not, as he might have done, register his trade name under the Utah trademark statutes, *see* U.C.A., 1953, § 70–3–1 *et seq.,* which provide a statutory cause of action against trademark infringers, *see* §§ 70–3–13, –14. Neither did plaintiff register his name under the federal trademark statutes, *see* 15 U.S.C. § 1052 *et seq.,* which also provide a statutory cause of action, *see* 15 U.S.C. § 1114 (1976). Nevertheless, plaintiff has a cause of action under the common law for an unregistered trademark. This common-law trademark right is recognized by state statute. *See* § 70–13–15.

*Budget Loan and Finance Plan,* 12 Utah 2d 18, 361 P.2d 512 (1961); *Zimmerman v. B. & C. Motel Corp.,* 401 Pa. 278, 163 A.2d 884 (1960); 74 Am.Jur.2d *Trademarks and Tradenames* §§ 46, 47 (1974). Such words include geographical terms (such as "North American," *see North American Aircoach Systems, Inc. v. North American Aviation, Inc.,* 231 F.2d 205 (9th Cir.1955), or "Columbia," *see Columbia Broadcasting System, Inc. v. Columbia of New York,* 97 N.Y.S.2d 455 (S.Ct.1950), *aff'd* 277 App.Div. 856, 98 N.Y.S.2d 384 (1951)), and descriptive or generic words (such as "Quality," *see Quality Weaving Co. v. Regan,* 245 Pa.Super. 66, 369 A.2d 296, 299 (1976)). The doctrine of secondary meaning provides that if a trademark or trade name composed of common words is entitled to protection, the user of the mark or name must

> by his efforts and expenditures, ha[ve] developed a reputation and good will for [its] business and its products, so that such name has come to mean, in the minds of the general public, that particular business and its products.

*Budget System, Inc. v. Budget Loan and Finance Plan,* 12 Utah 2d 18, 24, 361 P.2d 512, 516 (1961), *quoting American Home Benefit Ass'n, Inc. v. United American Benefit Ass'n, Inc.,* 63 Idaho 754, 761, 125 P.2d 1010, 1014 (1942). In other words, when a substantial number of patrons of plaintiff's business understand the word not in its primary, dictionary sense, but as signifying plaintiff's product or business, it acquires a secondary meaning. *Frostig v. Saga Enterprises, Inc.,* 272 Or. 565, 539 P.2d 154 (1975); 3 *Restatement of Torts* § 716, comment b (1938). *See also Shoppers Fair of Arkansas, Inc. v. Sanders Co. Inc.,* 328 F.2d 496, 499 (8th Cir.1964); 3 R. Callman, *The Law of Unfair Competition, Trademarks, and Monopolies* § 19.26 (4th ed. 1983, L. Altman ed.).

■ Various factors may evidence the secondary meaning necessary for a common word to be accorded legal protection. Those factors include long and continued use of the name; extensive advertising; and success or amount of business done by an enterprise. *Plains Tire and Battery Co.*

*v. Plains A to Z Tire Co., Inc.,* Wyo., 622 P.2d 917 (1981); *Sebago Lake Camps, Inc. v. Simpson,* Me., 434 A.2d 519 (1981); *Frostig v. Saga Enterprises, Inc.,* 272 Or. 565, 539 P.2d 154 (1975); *Rickard v. Caton College Co.,* 88 Minn. 242, 92 N.W. 958 (1903); *Colby College v. Colby College-New Hampshire,* 508 F.2d 804, 808 (1st Cir.1975).

■ Furthermore, to recover damages or obtain equitable relief for infringement of a trade name or trademark, a plaintiff must show that the trade names or trademarks are sufficiently similar to produce confusion among the customers of the businesses using the trade names and trademarks. *Plains Tire and Battery Co. v. Plains A to Z Tire Co. Inc., supra; Frostig v. Saga Enterprises, Inc., supra. See Security Title Insurance Agency v. Security Title Insurance Co.,* 15 Utah 2d 93, 387 P.2d 691 (1964); *Colby College v. Colby College-New Hampshire, supra; Pan American Realty Corp. v. Forest Park Manor, Inc.,* Mo., 431 S.W.2d 144 (1968).

■ One seeking to establish a protectible interest in a trademark or trade name which is in the public domain and which has not been registered pursuant to statute has the burden of proving that the term has acquired a secondary meaning and that use of the name or mark by another has caused confusion. *Sebago Lake Camps, Inc. v. Simpson,* Me., 434 A.2d 519 (1981); *Frostig v. Saga Enterprises, Inc., supra. See Budget System, Inc. v. Budget Loan and Finance Plan, supra.*

When a business has, through long and continued use or through extensive effort and advertising, built up a reputation in its trademark or trade name, this Court has prevented another business from moving into the same area and using a confusingly similar name. For example, in *Security Title Insurance Agency v. Security Title Insurance Co.,* 15 Utah 2d 93, 387 P.2d 691 (1964), the plaintiff had used the name "Security Title" throughout the state for 19 years, and for 11 years in a downtown Salt Lake office. Through "extensive effort and advertising," plaintiff had built up a

reputation and goodwill for its business with lawyers, lending institutions, real estate brokers, and other clientele of title insurance companies. The words "Security Title" became synonymous with plaintiff and its affiliated companies. The defendant Security Title Insurance Co., a California company, opened a Salt Lake office across the street from plaintiff's office in 1961. Because of the resulting confusion, and because the words "Security Title" had acquired a secondary meaning for the plaintiff, the Court enjoined the defendant from using the words "Security Title" as a business name in Salt Lake City and its environs.

In other Utah cases, although the term "secondary meaning" was not used, the doctrine has also been applied. *See Pioneer Savings and Loan Ass'n v. Pioneer Finance & Thrift Co.,* 18 Utah 2d 106, 417 P.2d 121 (1966); *Budget System, Inc. v. Budget Loan and Finance Plan,* 12 Utah 2d 18, 361 P.2d 512 (1961).

■ In "secondary meaning" trade name cases, the protection afforded is limited to "the area which is co-extensive with [the trade name's] reputation," *Seegmiller v. Hunt,* 15 Utah 2d 269, 270, 391 P.2d 298, 299 (1964), and the name may be protected even though the infringer is not in direct competition with the plaintiff if there is confusion because of the similarity in names. For example, in *Security Title Insurance Agency v. Security Title Insurance Co., supra,* the plaintiff was a title abstractor, whereas the defendant was a title insurer. Although the businesses were not identical, they were "so closely related" that the similarity of names would have a "deleterious effect" on the established business and mislead the public. 15 Utah 2d at 95, 387 P.2d at 692. *Accord Beef/Eater Restaurants, Inc. v. James Burrough Ltd.,* 398 F.2d 637 (5th Cir.1968); *Continental Motors Corp. v. Continental Aviation Corp.,* 375 F.2d 857, 861 (5th Cir.1967); *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 314 F.2d 149 (9th Cir.1963).

■ In the instant case, plaintiff concedes on appeal that the words "High Coun-

try" are geographical. The trial court found that the plaintiff had failed to prove that his trade name had acquired a secondary meaning or that confusion had resulted from the similarity in names. We, of course, will not disturb the trial court's findings if there is substantial evidence supporting the findings. *Christenson v. Commonwealth Land Title Insurance Co.,* Utah, 666 P.2d 302, 307 (1983); *Litho Sales v. Cutrubus,* Utah, 636 P.2d 487 (1981).

■ The evidence is meager that the words "High Country," as used by plaintiff in its trade name, had acquired a secondary meaning. Admittedly, the club was in operation three years before defendant opened his High Country Inn and Restaurant. However, mere length of use does not conclusively establish secondary meaning. *Budget System, Inc. v. Budget and Loan Finance Plan,* 12 Utah 2d 18, 24, 361 P.2d 512, 516 (1961). That rule has special force when the time of use is short, as in this case. Furthermore, plaintiff made almost no additional showing of secondary meaning. He offered no evidence as to the success of his club or the amount of business it does. The only evidence of advertising that plaintiff produced was the cost of a $3,500 sign reading "High Country Club" (the tavern) that he installed in front of his business, and some minor advertising done in the Yellow Pages of the telephone book. Perhaps most important, plaintiff made no showing at all of confusion between his club and defendant's restaurant. In sum, there was virtually no proof that the name "High Country Club" as used in connection with the tavern had acquired a secondary meaning or that there was customer confusion between the tavern and defendant's restaurant.

Concededly, there was evidence of confusion between plaintiff's High Country Restaurant and defendant's restaurant. However, plaintiff's restaurant was opened the same year as defendant's, apparently preceding the establishment of defendant's restaurant by at most two or three months. It is unclear whether plaintiff opened his restaurant without knowledge of defendant's

restaurant, or if he opened it in anticipation of defendant's restaurant, seeking to beat the defendant "to the draw." [2] It has been held that where a business uses a name in anticipation of use by another, widely-established business which will doubtlessly expand into the area, the first business can be enjoined from appropriating in advance the name of the second. *See, e.g., Food Fair Stores, Inc. v. Lakeland Grocery Corp.,* 301 F.2d 156 (4th Cir.1962). *Compare Shoppers Fair of Arkansas, Inc. v. Sanders Co.,* 328 F.2d 496 (8th Cir.1964).

■ In any event, plaintiff's use of the name "High Country Restaurant" so shortly preceded defendant's use of the same name that plaintiff could have established secondary meaning only by a showing of extensive advertising or a significant volume of business since his restaurant opened. However, at trial plaintiff proved neither; he showed only that he had spent $1500 on a sign reading "High Country Restaurant" and had advertised the restaurant in the Yellow Pages of the telephone book.

In short, the trial court's finding that plaintiff had not established that his trade name had acquired a secondary meaning was correct.

Affirmed. Costs to respondent.

HALL, C.J., and OAKS, HOWE and DURHAM, JJ., concur.

**2.** Plaintiff's testimony was that he had knowledge of defendant's plans to build a motel as early as 1978. No testimony was given as to whether plaintiff also knew of defendant's plan to build a restaurant.