361 P.2d 512

BUDGET SYSTEM, INC., Plaintiff and Respondent,

v.

BUDGET LOAN AND FINANCE PLAN, Defendant and Appellant.

No. 9224.

Supreme Court of Utah.

April 6, 1961.

Callister & Fullmer, Salt Lake City, for appellant.

Mulliner, Prince & Mulliner, Salt Lake City, for respondent.

FAUX, District Judge.

By this appeal we are asked to consider the decision in equity which has enjoined appellant corporation, defendant in the district court, from using in its name the word "Budget." This court accepts the definition and scope of its duty with respect to this appeal as set out in Corey v. Roberts.[1] Accordingly, as to errors assigned, we have considered both questions of law and of fact, keeping in mind, however, the rule that it is our duty to affirm the decision of the trial court, unless the evidence clearly preponderates against the findings and judgment of the trial court.

The trial court found that plaintiff's predecessors in interest, Mr. and Mrs. Hugh Barker, commenced the operation of a corporation loan and finance business in Salt Lake City under the name "Budget System," in the year 1928. During the year 1935 Budget System was disincorporated and the Barkers resumed operation as partners under the assumed names "Budget System" and "Budget Finance" as to which names affidavits were duly filed. In 1957 some of their small loan business was transferred to a corporation named "Budget System, Inc.," and in the same year the Barkers sold all of the stock in that company to American Co-op Finance Co., a corporation. The Barkers had floored automobiles *for dealers* in the name of Budget Finance until the cars were sold, at which time the cars were financed in the name of Budget System. The partnership, Budget Finance, had never had a bank account.

When they sold their stock in Budget System, Inc., they assigned the floor plan contracts and the balance of their small loan business to a partnership which operated under the name and style of Barker and Company.

Earlier facts relating to the defendant, appellant here, show that in the year 1948 Budget Loan and Finance Plan was incorporated in Utah. It was owned by a California corporation of similar name and was the parent and sole owner of two operating subsidiaries: One, Friendly Serv-

1. 82 Utah 445, 25 P.2d 940.

ice and Finance Company which became Credit Finance Plan; the other, Credit Industrial Loan Plan.

In 1958 to more profitably fit into "a national organization" acquired by the California parent company and operating under the name Budget Finance Plan, the name of Credit Finance Plan was changed to Budget Loan and Finance Plan through application to the Utah Bank Commissioner who, under the small loan law, licensed two locations for that name in Salt Lake City: 802 South State Street and the other in Sugar House.

The corporation, Budget Loan and Finance Plan has continued its small loan business at 802 South State Street since November, 1958. Since 1945 Budget System, Inc., has operated its small loan business at No. 854 South State Street. Previously for about five years it did business at No. 763 South State Street. Defendant makes no complaint about the foregoing historical facts as the trial court found them.

The first charge of error is in the finding that the word "Budget" in defendant's name since November 1958 has caused and will continue to cause confusion and deception to the public in the Salt Lake City area among present and potential customers therein; that the similarity of said name is a deceptive use by defendant, an unfair trade practice, and has and will result in probable damage to plaintiff's business.

The second charge is substantially within the first.

The third charge of error is the legal conclusion that plaintiff has acquired the exclusive right to use of the word "Budget" in conducting its credit and loan business in the Salt Lake City area.

The fourth charge of error is the court's decree in favor of plaintiff and against defendant by which defendant was enjoined from use in its business of the word "Budget."

Defendant's premise in assailing the trial court's decision is that the basis for an action to enjoin unfair competition is essentially one of fraud and deceit. In support of this it refers to Nims, Unfair Competition and Trade Marks, Fourth Ed. Sec. 6, pages 40 and 41, citing Reynolds & Reynolds Co. v. Norick, 10 Cir., 1940, 114 F.2d 278, and it stoutly contends that there is no evidence in the record of any fraud or deceit on its part.

Defendant's evidence here was presented apparently to persuade the court that their purpose in using the word "Budget" in their name was to build up the morale of numerous new employees obtained through purchase of finance companies in many states to round out their national chain which used "Budget" in its name. Another purpose was to decrease advertising costs by chain store methods and devices. Other advantages were advanced as being avail-

able through use of the name "Budget." Seemingly all of these motives are laudable from a business standpoint and may to some protect appellant entirely from the charge of pirating which appears in so many of the unfair competition cases.

Nevertheless, two phases of the evidence seem to indicate an intent to harm plaintiff, Budget System, Inc., rather than merely to benefit the internal competitive position of defendant Budget Loan and Finance Plan. The evidence shows that plaintiff has had its place of business in about the center of 800 block on State Street for about twenty years and for about fifteen years of that time at the present location 854 South State Street. It would seem something less than a friendly coincidence that when defendant began use of the name "Budget" it did so on a corner location one-half block away from plaintiff's place of business.

Of similar bearing is the emphasis upon the word "Budget" in letterheads and outdoor electrical signs. From these one would not get the impression that defendant made an attempt to modestly initiate the new name into its operations by overshadowing it with either of the words "Loan," "Finance," or "Plan."

These two factors would lend support to the view that the confusion which the trial court found to exist was not accidental but in fact grew out of a desire in defendant to appear as plaintiff for the purpose of benefiting from the good will and reputation which plaintiff claimed it had developed over the years and which good will was connected with patrons and the business by the name Budget System, Inc.

Inasmuch as many of the unfair competition cases are in the merchandising field, that generalization as to those cases will not be seriously contested. However, those cases involve what is termed "palming off" to the buyer of goods and merchandise which he did not intend to buy. Therein lies the fraud and deceit to which appellant refers. Ordinarily, in reliance upon a name, reputation, brand, wrapper or covering, a buyer purchases what has theretofore pleased him. If, because of a simulation as to one or more of those features, he gets something different or gets something made by some one other than the manufacturer whose name he relied upon, it may truly be said that he has been defrauded.

As will be pointed out, there is not in this case the classical situation of palming off, actually no "goods" being sold, no public being thus deceived and cheated. For all that the record shows the public may have been given better treatment at defendant's place of business than at plaintiff's. Accordingly, there must be additional reason why equity should intervene if the injunction imposed by the trial court should be allowed to stand.

**22**

There is another element in addition to and aside from damage to the public which will properly and effectively appeal to equity. Use of a name in combination with a service can by careful nurturing and skillful business practices develop something that identifies the type and quality of that service. In business as a whole it is known as good will. In a service rendered, it can properly be called reputation. By association, reputation attaches the name to the service and the service to the name. That reputation, then, seems to have the attributes of property, and justly the property of the one who nurtured and cultivated it.

If that conclusion is supported, then it would seem equitable that a second user of a name should be restrained from using it and thus prevented from reaping the benefits which the reputation developed by the first user places within his easy grasp.

In the excellent work already cited by appellant, Nims, Unfair Competition and Trade Marks, the author agrees that equity should act to protect the rights and property of individuals. He points out that there are three primary theories of why equity acts to enjoin unfair competition:

To promote honesty and fair dealing and stop deception and fraud.

To protect the purchasing public.

To protect the rights and property of individuals.

As the court's reasoning has developed, the third theory appeared first in point of time and may be first in importance as to why equity was justified in acting in this case. Further mention will be made of it.

The first theory is typically equitable, having to do with the promotion of honesty and fair dealing. Consider, however, that the product desired from both parties is money of the United States of America. Therefore, it cannot be said that any patron was dissatisfied with the product obtained at defendant's establishment. There is no evidence that plaintiff's interest rates are lower or that their loan advances are more generous or that their lending standards are less exacting of their patrons than those of defendant. Even so, if the element of fraud and deception of the public as to products and merchandise is not prominently before us, should use of respondent's name grant to defendant the right to assume the likeness of plaintiff so that plaintiff's patrons would be diverted to defendant's place of business?

The answer to that question probes deeply into both economics and law. By analogy to the location of a business, the answer easily could be "Yes." The mere fact that one has done business long and successfully at a location in the center of a block does not entitle him to enjoin a competitor from setting up a similar business on the corner of the same block that will stifle the trade of the earlier operator

and starve him out to the point of closing his doors. That answer seems to be influenced by changing habits of trade, initiative and free enterprise and serving the convenience of and improving accessibility to the trading public.

The answer "No" to that question has different roots. Nims· at page 41, commenting upon the basis for the action against unfair competition says:

"Whatever the basis of the action, it is regarded as the embodiment in law as the rule of fair play. As already suggested, its development is comparable to the gradual relaxation of the rule of *caveat emptor* in recent years. Today custom and law require use of truth in selling goods—truth as to their nature and under the law of trade-marks and of unfair competition of truth as to their origin. In these cases says Judge Learned Hand, '* * equity does not seek for general principles, but weighs the opposed interests in the scales of conscience and fair dealing.' "

To say that it is fair dealing when one closes his competitor's doors by acquiring a more advantageous location but that it is not fair dealing to close his doors by taking over a name that he has successfully used, requires intelligent probing as we "* * * weigh the opposed interests in the scales of conscience and fair dealing."

· The trial court's finding that the word "Budget in defendant's name * * * has caused and will continue to cause confusion and deception to the public in the Salt Lake City area among present and potential customers therein" seems based chiefly upon the inference that because both parties suffered from the confusion in their separate offices, that their patrons suffered from the same confusion. As the court reads the record, the clerks and other employees in both offices diligently checked records, made phone calls and routed patrons to the office where their accounts were or where they intended to open up an account so that the harm of the confusion was in the two offices for the record shows no patrons complaining. We agree, however, that the inference is justified. It is not difficult to understand that patrons would wait and wonder while records were being checked, they would chafe at delays, volatile blood pressures could easily evoke condemnation on both offices and so endanger loss of patronage and damage to either or both of these parties. We will take notice that fair competition presents to business men enough onerous burdens; that the confusion shown by the records is an unfair and frustrating burden which equity might under the foregoing rule appropriately alleviate.

By its findings the trial court seems justified, because of the first two of the stated theories, in concluding that plaintiff

had acquired the right to exclusive use of the word "Budget," in the finance business in this locality. This court sees from its review of this case possibly a more compelling reason in the third theory why plaintiff had the right and why equity should apply the remedy—that reason is recognition of the rights and property plaintiff had in the name, Budget System, Inc.

"Budget," the word both parties claim the right to use is clearly general in its meaning, use and application, a generic term, commonly used by many people in all walks of life. Courts of high standing have said that one may not acquire property rights in such words. Appellant cites a California case [2] as authority for the view that plaintiff had no property right in the word "Budget,"

"The doctrine is so well settled by a multitude of cases that it is not necessary to cite specific cases, that words in common use are regarded as common property, and may be used by others in combination with other descriptive words, provided they are not so used in combination with other descriptive words, symbols, or designs as to render it probable that they would mislead persons possessing ordinary powers of perception."

The opposite view is expressed in an Idaho case: [3]

" 'The cases are very numerous: where relief has been afforded upon the ground of unfair competition against a deceptive use of generic or descriptive names and marks, personal, geographical, corporate, and other names, none of which are capable of exclusive appropriation as technical trademarks.'

" * * * it is well settled that when a person has adopted, *as the name of a business,* a term originally geographical, and, by his efforts and expenditures, has developed a reputation and good will for such business and its products, so that such name has come to mean, in the minds of the general public, that particular business and its products, such name thereby acquires a 'secondary meaning,' as indicating such business, and its owner is entitled to protection, in its use, by a court of equity."

Where a party uses a trade name for a long time it is evidence, though not conclusive, of the secondary meaning of the term. Bernstein v. Friedman, 62 Wyo. 16, 160 P.2d 227.

■ This court finds itself in agreement to large extent with the reasoning and principles expressed by the Idaho Supreme Court in the American Home Benefit Asso-

2. Fidelity Appraisal Co. v. Federal Appraisal Co., 1933, 217 Cal. 307, 317, 18 P.2d 950, 954.

3. American Home Benefit Association, Inc. v. United American Benefit Association, Inc., 63 Idaho 754, 125 P.2d 1010, 1014.

ciation case, supra, and believing as set out in the views announced above that the evidence supports the findings and that the findings support the conclusions and decree of the trial court, we affirm that decree.

Costs are awarded to respondent.

WADE, C. J., and McDONOUGH and CROCKETT, JJ., concur.

HENRIOD, J., concurs in the result.

CALLISTER, J., having disqualified himself, does not participate herein.