414 P.2d 93

**ALLEN'S PRODUCTS COMPANY, dba Hi-Spot Drive-Inns, Plaintiff and Appellant,**

v.

**Gene GLOVER and Owen G. Richardson, dba Genie Boy's, Defendants and Respondents.**

No. 10476.

Supreme Court of Utah.

May 17, 1966.

Howard & Lewis, Jackson B. Howard, Provo, for appellant.

Rawlings, Wallace, Roberts & Black, Richard C. Dibblee, Gustin, Richards & Mattsson, William S. Richards, Salt Lake City, for respondents.

CROCKETT, Justice:

Plaintiff, an operator of drive-in restaurants in Utah County known as Hi-Spot Drive-Inns, seeks injunctive relief and damages for alleged unfair competition against defendant Gene Glover for copying and using the design of plaintiff's drive-ins in Glover's restaurant at 7200 South State in Midvale, Utah. Upon the basis of the facts developed at pre-trial, the District Court granted the defendant's motion for summary judgment. Plaintiff appeals.

We first direct attention to the plaintiff's attack upon the judgment because of alleged impropriety in that a second judge entered an order of dismissal after such a motion had been denied by another division of the District Court. The position essayed is not tenable. Even where one judge of the court has denied a motion to dismiss, upon further proceedings the trial judge not only can but should grant a motion for summary judgment if he feels certain that he would rule that way no matter what proof a party could produce in support of his contentions.[1] It is obvious that to do otherwise and carry on a trial would be but a waste of time.

Though this is a summary judgment in which we review the record in the light most favorable to the losing party, it was based upon depositions and photographs of the buildings in question so the essential facts were fairly well disclosed to the trial court, and consequently to us.

Plaintiff began his operation of drive-in restaurants in 1949 in Utah County and has gradually expanded until he now has six locations there. One is in Springville, two in Provo, two in Orem, and one in American Fork. The foundation of the plaintiff's complaint against the defendant is that in the last two of his drive-ins constructed, the one in American Fork in 1961 and the one in Springville in 1963, he employed Ashworth Architects to draw a plan for a building of unique design, convenient for use as a drive-in, and particularly attractive to the public. One of plaintiff's employees, Owen Richardson, who was manager of the American Fork drive-in, without the knowledge or consent of the plaintiff gave a copy of these building plans to the defendant. Although the parties dispute each other as to the extent defendant followed these plans, we accept the facts as plaintiff asserts them: that the defendant followed the plans almost exactly.

The gravamen of the plaintiff's complaint is that the defendant in his drive-in

1. Rule 56, U.R.C.P.

in Midvale copied the unique appearance of the plaintiff's drive-ins at American Fork and Springville to pirate the good will and reputation the plaintiff has established with the public which thus results in unfair competition. The position taken by the defendant, sustained by the trial court, denies and joins issues with that charge.

Like many a charge indicting the conduct of others, the charge of "unfair competition" is easy to state in generality, but is somewhat more difficult to apply in particular circumstances.[2] Continuing in generality, freedom of competition is a wholesome and stimulating influence in business and upon society. Yet it is easy to see that this freedom could be carried to such extremes and result in such abuses that its purpose would be defeated. When one in conformity with that privilege engages in business and by dint of honesty, industry and merit establishes a good name and reputation for his product or service, the goodwill engendered is an important factor in the value of the product or service and in the business of its user. The reputation for quality becomes known variously through the use of trade-names, brand-names, trade-marks, and other means of identification. Although this was perhaps even more important in former times when so many people could not read, it is nevertheless still the common practice and a significant aspect of commerce.[3]

When any such identification of a product or service has been established in the mind of the public, there is not only the valuable interest therein which belongs to its creator, but the public also has an interest to be protected in order that it can safely rely on the established reputation for quality. Where such a reputation has been earned, to permit someone who had nothing to do with developing it to appropriate and use it as his own, results in a two-pronged evil: depriving the one who created it of the reward of his efforts; and deceiving the public. The encouragement of meritorious service and the good order of society demand the recognition of these interests.[4] Such a pirating of that which belongs to another and deceiving the public is so plainly contrary to principles of fairness and good conscience that courts of equity have not hesitated to grant redress.[5]

2. Nims, Unfair Competition and Trade Marks, 4th Ed. § 4, pp. 30–35.

3. United States v. Steffens, 100 U.S. 82, 25 L.Ed. 550.

4. Nims, supra, p. 36. These theories are also discussed in Budget Systems, Inc. v. Budget Loan and Finance Plan, 12 Utah 2d 18, 361 P.2d 512.

5. Budget System, Inc. v. Budget Loan and Finance Plan, supra.

The safeguarding of such rights is covered to some extent by our statutes. Sec. 70–3–1, U.C.A.1953, provides for protection in the use of trade-marks and trade-names and also deals with trade practices. A portion of the common law relating to unfair competition enacted into statute is not necessarily all inclusive as to what rights may be protected, nor does it limit the application of the sound principles hereinabove discussed where the facts constituting unfair competition are shown to exist.[6] It seems appropriate to observe that we have no doubt that if a building of some unusual or unique design, or perhaps some other unusual or unique device, were so created and used in connection with products or services that it became identified with them in the public mind, under proper circumstances a court might find it so manifestly unjust to permit an interloper to copy it and pirate the reputation established that redress should be granted.

In this case the buildings of the parties are indeed so similar in appearance that it is easy to believe that they were constructed from the same plans. The lower portion of each, up to about three feet, is of ordinary opaque materials painted white, with the upper portion, about six feet, up to the canopy-type roof, almost entirely of glass. This exposes the interior equipment and the working area of the drive-ins to the customer's view. The most significant similarity is that the canopy tops are so fashioned that viewed from the end they have the appearance of two diamond-shapes in juxtaposition to each other.

Notwithstanding this general similarity of appearance, there are several considerations which impel us to agree with the trial court's dismissal of the plaintiff's complaint.

In the first place it is realized that the number of geometric designs in which buildings may be constructed are comparatively few. The figure known as a diamond is a very common one and a court should be reluctant to permit a person to appropriate such a common figure exclusively to his own use. This makes the situation a little different from those in which a party by some ingenuity and art has created a design or device which is unique or unusual.

Another noteworthy fact bearing on the problem here is that the defendant's building is somewhat different in its exterior paint, and that it has a fairly large sign

**6.** See 70–3–15, U.C.A.1953; W. E. Long Co.—Independent Bakers' Co-op. v. Burdett, 147 W.Va. 177, 126 S.E.2d 181.

"Genie Boy's," which though parallel to the highway, is plainly visible on top of the canopy.

There is also some significance in the distance the businesses are apart. If one business such as plaintiff's, having a particular design of building presenting a unique appearance has been established for considerable time, and another similar to it were placed comparatively close to it in the same trade area, a problem such as we here consider might be quite different than it is under the facts of this case. The plaintiff's drive-ins are in Utah County and the nearest one to Salt Lake County is in American Fork. The defendant's business is not in the same trade area, but is around the Point Of The Mountain, 17 miles away, at Midvale in Salt Lake County.

It is important to note that this is not a suit for the wrongful taking or conversion of the plans for the building. That is another matter and there is a separate suit pending in which Ashworth Architects, designer and owner of the plans for these buildings, is suing the defendant to recover for the alleged wrong of appropriating and using these architectural plans.

For the reasons discussed herein, it is our conclusion that the trial court was correct in ruling that under the facts shown and the claims made by the plaintiff he could not establish a right of recovery.

Affirmed. Costs to defendant (respondent).

McDONOUGH, WADE, and CALLISTER, JJ., concur.

HENRIOD, Chief Justice (dissenting).

Respectfully, I dissent. Upon reading the main opinion, I agreed with everything through paragraph 9, and thought the plaintiff was prevailing. Thereafter, through paragraph 15, I found it was not.

The main opinion said "the number of geometric designs in which buildings may be constructed are comparatively few," with which I disagree. The opinion continues that "The figure known as a diamond is a very common one and a court should be reluctant to permit a person to appropriate such a common figure exclusively to his own use." This statement admits that if the court is not very reluctant, the rough-cut diamond might obtain a significance that, coupled with some highly polished facets might become a priceless jewel,—separate from an optically similar stone, having a brilliance and lustre that are induplicable.

The fallacy of the main opinion is in implying that a diamond shape, though in-

appropriable as such, cannot be appropriated if used in a unique way, including its association with new or different applications to which it may be combined. This is to say that the diamond symbol, when associated with, for example "Diamond-T" a well known national brand, will permit poachers indiscriminately to use "Diamond-T" in advertising a similar product. The cases have never permitted a purloining of an identical trade name simply because there was a diamond symbol somewhere in what the main opinion concedes was a unique architectural design.

The famed "Brown Derby" restaurant owners will be somewhat amazed to read that their use of a sphere and a couple of other curved areas painted brown could be exploited by someone else 17 feet or 17 blocks or 17 miles from this famed meeting place of Hollywood celebrities. Safeway Stores also might arch skeptical brows in learning that their use of the letter "S" in a unique way, known and recognized by the public as its hard-earned trade-mark, now has no protectible value in this state, and must succumb to an interloper opening a store next door using the identical symbol or a deceptive replica thereof. The "M.J.B." coffee company may have some concern if another coffee company started selling "M.J.B." coffee. I am sure there

would be some consternation if someone on Main Street, Salt Lake City, or for that matter, in Sandy, Utah, 17 miles away, built a building of the same design,—color or no color, and advertised identical commodities for sale as does the "Z.C.M.I." The Taj Mahal people might not only resent but if it were in this country, might be protected if someone built one just like it 17 miles away and held it out as a tourist attraction to entice paying customers.

The main opinion makes a point that there was some difference in the paint used and there was a different name on the roof—conveniently placed parallel to the highway so that travelers would go past the place before knowing it was not one of plaintiff's five drive-ins,—a clever deception in and of itself. The paint cannot destroy the uniqueness of design and architecture,—since it is the latter that is protected by the common law if recognized and relied upon generally or specifically by prospective patrons.

The main opinion says there is significance in the distance defendant's place is from plaintiff's. Seventeen miles. On a transcontinental highway, with freeways. In this day and age, and in this particular case the distance is about 10 to 15 minutes away.

**16**

The main opinion points out that this is not a case for conversion of plaintiff's architectural plans and volunteers that there is a suit pending by the architects against the defendant for stealing the plans. That fact pretty conclusively shows that defendants purloined the plans, built their building exactly according thereto, right down to the placement of trash cans as the exhibits clearly demonstrate. Why? The only reasonable conclusion is that it was to capitalize on plaintiff's five established business locations, situated on the same highway in close proximity to profit by plaintiff's ingenuity, uniqueness of design and the business of its established going concerns.

The case should be reversed.