AMERICAN AIRLINES, INC., Plaintiff,

v.

PLATINUM WORLD TRAVEL; Coupon Connection; Texas Budget Flights, Inc., d/b/a "Texas Travler"; Ernest W. Carlson; Bruce H. Briggs; Robert J. Baumann; Randall Christensen; Curtis R. Sweeten; and Tonya K. Sweeten, Defendants.

### Civ. No. C–88–770W.

United States District Court,
D. Utah, C.D.

Oct. 16, 1990.

Stewart M. Hanson, Jr., Andrew W. Buffmire, Paul M. Simmons, Salt Lake City, Utah, Richard A. Rothman, Bonnie Garone, Weil, Gotshal & Manges, New York City, for plaintiff.

M. David Eckersley, Samuel Alba, Salt Lake City, Utah, for defendant Randall Christensen.

Paul D. Newman, Salt Lake City, Utah, Scott R. Wangsgard, West Valley, Utah, for remaining defendants.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on the plaintiff's motion for partial summary judgment. The court had carefully read the relevant documents submitted by the parties before the hearing, and at the conclusion of the hearing, the court took the matter under advisement. Having considered the matter further, the court now renders the following memorandum decision and order.

## BACKGROUND

Most of the material facts are set out in the court's earlier ruling in this case found

at 717 F.Supp. 1454 (D. Utah 1989), *modified*, 737 F.Supp. 627 (D. Utah 1990). Only a brief review will be given here. The plaintiff operates a promotional frequent flyer program whereby travel awards are given to loyal customers. A frequent flyer customer who qualifies may request a travel award by completing an application. Once the request is made, a unilateral contract is formed. *Id.* at 1461 n. 18. The application requires that the customer explicitly agree that the award will not be purchased, sold, bartered or exchanged for cash or any other consideration. However, at the time the award is requested the customer may have the award issued in the name of the customer or any other person. The award is strictly nontransferable after it has been issued.

The defendants are involved in the business of brokering frequent flyer travel awards issued by the plaintiff. The defendants advertise in travel magazines that they will purchase travel awards from airline customers participating in frequent flyer programs. In a typical transaction, the defendants issue a check to a frequent flyer participant in full or partial payment for a travel award. The customer then requests a travel award from the plaintiff in the name of an individual specified by the defendants. The customer delivers the award to the defendants who in turn sell the award to the individual in whose name the award was issued. Finally, the defendants have developed a rather elaborate system of deception to prevent the plaintiff from learning that the award was brokered.

## STANDARD OF REVIEW

The standard for this court to rule on summary judgment motions is set forth in Federal Rule of Civil Procedure 56(c). Summary judgment shall be granted when parties to a lawsuit do not dispute any material facts and judgment in favor of the moving party is appropriate as a matter of law. A moving party may demonstrate no

material facts are disputed through "pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, demonstrates ... there is [no] evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has carried this burden Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.[1] The non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552.

To be considered the evidence must be admissible under the evidentiary standard that would be applied at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In considering a summary judgment motion, however, this court does not weigh the evidence but instead inquires whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2511.[2] To determine if sufficient evidence exists "the inferences to be drawn from the underlying facts [in the admissible record] ... must be viewed in the light most favorable to the [nonmoving] party." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (*quoting United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). Finally, any admissible facts asserted by the party opposing the motion that are not controverted must be regarded as true.

## DISCUSSION

The plaintiff moves for summary judgment on the issue of liability under its

---

1. The summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Id.*

2. "The mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512.

claims for tortious interference with contractual relations and unfair competition. The defendants offer three principle arguments in response. First, the defendants argue that the nontransferability agreement between the plaintiff and its customers is unenforceable. In the alternative the defendants claim that the enforceability of the provision is a question of fact which requires further extensive discovery in this case. Second, the defendants argue that even if the nontransferability clause is enforceable, the plaintiffs have not established the elements of tortious interference and unfair competition as a matter of law. Third, the defendants claim that in any event, the plaintiff has not demonstrated and cannot demonstrate that it has suffered any injury because of the defendants' brokering activity. The defendants maintain that although the present motion does not seek judgment on the issue of damages, the plaintiff should not be allowed to prevail on the issue of liability without the showing of some injury. The court will briefly discuss each of these arguments in turn.

### 1. Enforceability of transferability restriction.

The defendants claim that the provision restricting the transferability of travel awards is unenforceable because it violates the principles of 15 U.S.C.A. § 45 (West Supp.1990) as reflected in state unfair trade legislation. The court rejects the defendants' position. As the plaintiff points out, § 45 specifically exempts air carriers and there is no indication that any state has applied trade legislation to air carriers in circumstances such as these.[3] Additionally, the defendants have cited no case in which a restriction on transferability similar to the one in this case has been held to violate § 45 or any analogous state statute.[4] In contrast, the plaintiffs have cited several cases in which nontransferability provisions have been upheld in circumstances similar to the present case. *E.g. Bitterman v. Louisville & Nashville Railway Co.*, 207 U.S. 205, 28 S.Ct. 91, 52 L.Ed. 171 (1907); *Kirby v. Union Pac. Railway Co.*, 51 Colo. 509, 119 P. 1042 (1911). The court will not order extensive discovery and undertake an elaborate analysis under § 45 based on the defendants' weak position.

---

3. Utah's Unfair Practices Act makes unlawful "[u]nfair methods of competition in commerce or trade...." However, the statute also provides that the "division may prevent persons, except ... common carriers ... from using unfair methods of competition in commerce or trade." Utah Code Ann. § 13–5–2.5 (Supp.1990). Utah courts have not indicated whether air carriers are considered common carriers for purposes of this provision; however, air carriers seem to fit within the definition given in Black's Law Dictionary:

> Any carrier required by law to convey passengers or freight without refusal if the approved fare or charge is paid in contrast to private or contract carrier. One who holds himself out to the public as engaged in business of transportation of persons or property from place to place for compensation, and who offers services to the public generally.

Black's Law Dictionary 249 (5th ed. 1979).

4. The defendants almost misrepresent the principles established by the cases growing out of *In re Sperry & Hutchinson Co.*, 73 F.T.C. 1099 (June 26, 1968). In *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972), the United States Supreme Court affirmed a Fifth Circuit decision setting aside the F.T.C.'s June 26, 1986 order. On Remand, the F.T.C. entered a consent order which states in part:

> It is further ordered, That respondent: (a) Within sixty (60) days after the effective date of this order make an application to vacate every injunction which has been issued in any court within the twelve years preceding the effective date of this order against the redemption, exchange, sale or other use of respondent's trading stamps by any commercial trading stamp exchange, without prejudice to respondent's right to bring new actions in the same courts (and in other courts) to enjoin the redemption, exchange, sale or other use of S & H trading stamps by such commercial trading stamp exchanges in the future on the basis of facts occurring after the aforementioned injunctions have been vacated....

*In re Sperry & Hutchinson Co.*, 83 F.T.C. 478 (Sept. 18, 1973), *modified,* 104 F.T.C. 576 (1984). Although other provisions of the order imposed a notice requirement on Sperry & Hutchinson, the defendant was expressly permitted to take steps to prevent the transfer of its trading stamps.

To do so would simply further delay the resolution of this dispute.

## 2. *Interference with performance of contract.*[5]

■ In *Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293 (Utah 1982), the Utah Supreme Court followed the Restatement's formulation of the tort of intentional interference with performance of contract.[6] There is no question that the defendants' actions in this case were intentional.[7] There is also no reasonable question that the defendants' actions caused the plaintiff's customers to breach their contracts with the plaintiff. The only element at issue is whether the interference by the defendants was "improper."

The Restatement lists several factors in § 767 to assist "in determining whether interference is improper."[8] Unfortunately, none of these factors address precisely the unusual circumstances in the present case. The type of interference before the court does not involve a classic interference with performance of contract problem. This is not a case in which the defendants are competing with the plaintiff. The defendants' interference is not a by product of the defendants' attempts to lure away the plaintiff's customers so that the defendants may provide air transportation for the customers. This case is unusual because the defendants do not want the plaintiff's customers to breach their contracts under circumstances in which the plaintiff also refuses to perform. Rather, the defendants' business depends upon their ability to induce the plaintiff's customers to breach their contractual obligations while the plaintiff continues to perform. In order to accomplish this the defendants have developed an elaborate system of deception enlisting the aid of the plaintiff's customers and the purchasers of the brokered tickets. This system involves, among other things, the booking of false reservations in order to prevent detection by the plaintiff. The defendants also instruct the ticket purchaser to prevent the plaintiff from learning that the travel award was purchased.

The defendants' insist that in order to make interference improper, deception and misrepresentation must be directed toward

---

**5.** The defendants argue that this case involves the interference with prospective business relations rather than interference with performance of contract. While the court disagrees, the distinction is of no consequence. The Restatement requires the interference to be "improper" in either case, and the court believes that the defendants' interference is, in fact, improper under either cause of action.

**6.** Section 766 of the Restatement provides:

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (Second) of Torts § 766 (1979).

**7.** The following language is found in comments i and j to § 766:

To be subject to liability under the rule stated in this Section, the actor must have knowledge of the contract with which he is interfering and of the fact that he is interfering with the performance of the contract.... But it is not necessary that the actor appreciate the legal significance of the facts giving rise to the contractual duty, at least in the case of an express contract. If he knows those facts, he is subject to liability even though he is mistak-

en as to their legal significance and believes that the agreement is not legally binding.... The rule stated in this Section.... applies also to intentional interference, as that term is defined in § 8A in which the actor does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of his action. The rule applies, in other words, to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action.

Restatement (Second) of Torts § 766 comments i and j (1979).

**8.** Section 767 states:

In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference, and

(g) the relations between the parties.

the customer such as when a defendant defames the character of the plaintiff. This assertion is without merit. The defendants offer no supporting authority and the court has found none. Common sense dictates the conclusion that the system of deception practiced in this case is equally or more improper than efforts to deceive the customer.

In summary, it is difficult to see how the defendants' interference in this case can be characterized as anything but improper. The court also finds no merit in the defenses of estoppel, waiver, and laches. If the defendants are allowed to persist, the plaintiff must either cease efforts to enforce an otherwise valid contract provision or else constantly question the veracity of the customers it attempts to service. There is no reason the plaintiff should be forced into this position. The court believes the defendants are liable for tortious interference with performance of contract as a matter of law.

3. *Unfair competition.*

■ The court believes that summary judgment should be granted on the plaintiff's claim for unfair competition on the issue of liability. The tort of unfair competition often involves the attempt by one person to represent goods or services to the public as the goods or services of another. *Budget System, Inc. v. Budget Loan and Fin. Plan,* 12 Utah 2d 18, 361 P.2d 512 (1961). However, it appears that unfair competition is not restricted to this type of public deception. In *Dubuque Prod. Inc. v. Lemco Corp.,* 227 F.Supp. 108 (D. Utah 1963), the court found the defendants liable for the misappropriation of the plaintiff's confidential business information. The defendant had obtained the information through deceptive means.

The present case fits easily within the *Dubuque* holding. The defendants admit they have paid frequent flyer participants to breach contract provisions with the plaintiff. Additionally, the defendants have practiced a deception on the plaintiff such that the plaintiff is unable to detect that the contract provisions have been breached. This is done so the defendants might sell the plaintiff's travel services in violation of the plaintiff's contractual arrangements with its frequent flyer customers. The court agrees with the plaintiff that the defendants' business goes far beyond misappropriation of information. Rather, the defendants are misappropriating the actual services of the plaintiff. The court believes the defendants' activity constitutes unfair competition as a matter of law.

4. *Damages.*

■ The defendants argue that the plaintiff's motion should be denied because the plaintiff has "failed to produce any evidence of the fact of injury." In support of this position, the defendants argue that there is no evidence that the tickets they brokered were ever used on American flights. The defendants further insist that the plaintiff has suffered no injury even if the defendants' brokered tickets were used on American flights. The defendants reason that in terms of damages, there is no difference between the plaintiff providing air travel to one of its customers under a frequent flyer award and providing air travel to an individual to whom the customer might sell the award. The defendants also point out that there is no evidence that purchasers of brokered tickets would purchase tickets from American if the brokered tickets were unavailable.

The court believes that the defendants' position with respect to damages must be rejected as a matter of law. First, the court believes that there is no material doubt that at least some of the defendants' brokered tickets were used to obtain travel services from the plaintiff. The record shows numerous transactions in which the defendants purchased travel awards from frequent flyer participants and subsequently sold the awards, in some cases for several thousand dollars. It is impossible to conclude that the defendants' brokered tickets were never used to obtain travel services from the plaintiff.

Second, the plaintiff need not document a specific instance of lost revenue in order to

establish that it has been injured and that it is entitled to damages. The plaintiff has established that brokered travel awards are invalid. The plaintiff has also established as a matter of law that the defendants caused invalid awards to be used to obtain travel services from the plaintiff. It is hard to imagine a more clear demonstration of injury. The courts conclusion on this issue is supported by several cases the plaintiff cites. *Bitterman v. Louisville & Nashville Railway Co.*, 207 U.S. 205, 28 S.Ct. 91, 52 L.Ed. 171 (1907); *Kirby v. Union Pac. R.R. Co.*, 51 Colo. 509, 119 P. 1042 (1911). Although these authorities are dated, the court has no reason to believe they should not be followed. To the degree that *TransWorld Airlines, Inc. v. American Coupon Exchange, Inc.*, 913 F.2d 676 (9th Cir.1990) is to the contrary, the court declines to follow it.

Accordingly, IT IS HEREBY ORDERED that the plaintiff's motion for partial summary judgment is granted. This Memorandum Decision and Order will suffice as the court's ruling on this matter and no further order need be prepared by counsel.