**The PROCTOR & GAMBLE COMPANY and The Proctor & Gamble Distributing Company, Plaintiffs,**

v.

**Randy L. HAUGEN, et al., Defendants.**

**Civil No. 1:95–CV–0094W.**

United States District Court,
D. Utah,
Northern Division.

Dec. 3, 1996.

Tracy H. Fowler, William H. Christensen, Sean N. Egan, Campbell, Maack & Sessions, Salt Lake City, UT, Stanley M. Chesley, Theresa L. Groh, Waite, Schneider, Bayless & Chesley, Thomas S. Calder, John E. Jevicky, Robert Hueck, Dinsmore & Shohl, Cincinnati, OH, Joseph P. Suarez, Michael V. Withrow, Procter & Gamble—Legal Div., Cincinnati, OH, for Plaintiffs.

Scott Daniels, Julianne R. Blanch, Snow Christensen & Martineau, Dale J. Lambert, Gainer M. Waldbillig, Christensen & Jensen, Salt Lake City, UT, James R. Sobieraj, Timothy Q. Delaney, Brinks Hofer Gilson & Lione, Chicago, IL, Michael A. Mohr, Albertus Hultink, Sharon D. Grider, Amway Corporation, Ada, MI, William Abraham, Rick J. Abraham, Columbus, OH, Joseph J. Joyce, Kristin A. VanOrman, Strong & Hanni, James D. Gilson, Van Cott Bagley Cornwall & McCarthy, Salt Lake City, UT, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

WINDER, Chief Judge.

This matter is before the court on Defendants' motions to dismiss counts two, three, and five of Plaintiffs The Proctor & Gamble Company's and The Proctor & Gamble Distributing Company's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] In addition, Defendant Amway Corporation moved the court to dismiss John Does 1–5.[2] The court held a hearing on the motions on November 6, 1996. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties relating to their motions. The court had also read certain of the authorities cited by each of the parties. Following oral argument, and after taking the motions under advisement, the court has further considered the law and facts related to each motion. Having now fully considered the issues in this case, and good cause appearing, the court enters the following memorandum decision and order.

## I. BACKGROUND

Plaintiffs allege the following facts which, although disputed by Defendants, are assumed by the court to be true for purposes of this motion.

Randy L. Haugen is an "Executive Diamond" level distributor of Amway products and a developer of Amway business in the distribution chain of Amway.[3] Haugen has established a network and chain of an estimated 100,000 other distributors of Amway products throughout Utah, Nevada, Texas, Mexico, and Canada. Rodger D. Patton, Jeffery G. Musgrove, Steven E. Brady, Stephen L. Bybee, and Ted Randal Walker are Amway distributors in Haugen's distribution network. Haugen, Patton, Musgrove, Brady, Bybee, and Walker will be referred to as the "Distributor Defendants."

Amway sells to its distributors a communication system known as Amvox. Amway has the capability to receive messages on the Amvox system from distributors and to send messages to all distributors who subscribe to Amvox.

In or about April and May 1995, the Distributor Defendants circulated and published through the Amvox system and other media false and defamatory written and oral statements regarding Plaintiffs. The statements, made with actual knowledge of their falsity or with malicious and reckless disregard as to their truth or falsity, associate Plaintiffs with satanism and describe Plaintiffs' "moon and stars" trademark as a satanic symbol. The statements further promote a boycott of Plaintiffs' products and the purchase of competing Amway products.

The publications by the Distributor Defendants are not the first such publications propagated and circulated by Amway distributors. In 1991 Plaintiffs obtained a judgment against two Amway distributors for spreading rumors linking Plaintiffs' trademark with satanism, and Plaintiffs have directly informed Amway various times in the 1980s and 90s about such rumors being spread by other Amway distributors. Despite this information, Amway has done little or nothing to educate its distributors about such rumors or prevent these rumors from being spread to the marketplace by their distributors.

Based on these allegations, Plaintiffs brought suit against Defendants for defamation, common-law unfair competition, violation of the Utah Truth in Advertising Act,

---

1. Instead of a motion to dismiss, Defendants Randy L. Haugen, dba Freedom Associates, and Freedom Tools filed a motion for summary judgment on claims two, three, and five. At their request, the court will treat their motion at this time as one to dismiss under Rule 12(b)(6).

2. Amway also made a motion for a more definite statement. Amway has since withdrawn that motion.

3. Besides his own distribution network, Haugen has been highly involved with Amway in other capacities. Haugen is a member of the Executive Committee of the Amway Distributors Association Council (the "ADAC") and a past co-chairman of the Business Operations Committee of the ADAC. The mission of the ADAC is to "advise and consult with Amway on all aspects of the business and to take an active role in shaping Amway's future." *Amagram,* Feb. 1994, at 39.

violation of the Lanham Act, tortious interference with economic relations, negligent supervision, and vicarious liability. In their motions, Defendants seek to have dismissed counts two (common-law unfair competition), three (violation of the Utah Truth in Advertising Act), and five (tortious interference with economic relations).

## II. *LEGAL STANDARD UNDER RULE 12(b)(6)*

The court will dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted " 'only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief. In making this determination, [the court] must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.' " *Roman v. Cessna Aircraft Co.,* 55 F.3d 542, 543 (10th Cir.1995) (quoting *Sharp v. United Airlines, Inc.,* 967 F.2d 404, 406 (10th Cir.), *cert. denied,* 506 U.S. 974, 113 S.Ct. 464, 121 L.Ed.2d 372 (1992)). In addition, all inferences that can be drawn from the allegations must be drawn in favor of the plaintiff. *Arnold v. McClain,* 926 F.2d 963, 965 (10th Cir.1991). "[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailable one." *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) (citation omitted) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984)).

## III. *DISCUSSION*

### A. *Common–Law Unfair Competition*

■ Plaintiffs assert that Defendants' publications of defamatory statements con-

cerning Plaintiffs' alleged involvement with satanism constitute unfair competition. Unfair competition has developed generally into two branches: 1) passing-off or palming-off claims; and 2) misappropriation claims.[4] A passing-off claim alleges that a defendant engaged in a scheme to have his goods or services "pass" in the marketplace as those of the plaintiff. *Reynolds & Reynolds v. Norick,* 114 F.2d 278, 281 (10th Cir.1940) (passing off forms used by car dealers). The gravamen of a misappropriation claim is that a defendant has seized for his own benefit something of value that the plaintiff had built up through time, money, or effort, which is then generally used to compete against the plaintiff. *See American Airlines v. Platinum World Travel,* 769 F.Supp. 1203, 1207 (D.Utah 1990) (misappropriation of information and services); *Budget Sys. v. Budget Loan & Fin. Plan,* 12 Utah 2d 18, 361 P.2d 512, 514 (1961) (misappropriation of goodwill).

■ Plaintiffs have alleged neither type of claim in their complaint. Instead, Plaintiffs argue that Defendants' circulation of the defamatory rumors constitutes unfair competition because such actions "violate traditional norms of fair play." Although unfair competition "is regarded as the embodiment in law as the rule of fair play," *Budget Sys.,* 361 P.2d at 515, no Utah court has extended unfair competition beyond the two established branches to include defamation in the marketplace. The court declines to do so here. The court will not create a new cause of action under the umbrella of unfair competition which would essentially be identical to an already well-established cause of action and would offer no further protection of commercial values. Accordingly, Defendants' motions to dismiss Plaintiffs' unfair competition claim is granted.

### B. *Truth in Advertising Act*

Plaintiffs allege that Defendants' dissemination of defamatory statements about Plain-

---

4. Unfair competition may encompass other types of conduct. According to Prosser & Keeton, *The Law of Torts,* § 130, at 1015 (1984), unfair competition "does not describe a single course of conduct or a tort with a specific number of elements; it instead describes a general category into which a number of new torts may be placed when recognized by the courts. The category is open-ended, and nameless forms of unfair competition may be recognized at any time for the protection of commercial values."

tiffs violated Utah's Truth in Advertising Act (the "TIAA"). The TIAA states that it is a deceptive trade practice to "disparage[ ] the goods, services, or business of another by false or misleading representation of fact." Utah Code Ann. § 13–11a–3(1)(h) (1996). The stated legislative purpose of the TIAA "is to prevent deceptive, misleading, and false advertising practices and forms in Utah. This chapter is to be construed to accomplish that purpose." Utah Code Ann. § 13–11a–1. Plaintiffs seek both injunctive relief and damages.

Defendants argue that Plaintiffs' TIAA claim must be dismissed. First, Defendants contend that Plaintiffs are not entitled to injunctive relief under the TIAA because Plaintiffs did not allege in their complaint that they notified Defendants of the alleged violation as required by the TIAA.[5] Second, because Plaintiffs are not entitled to injunctive relief under the TIAA, Defendants maintain that Plaintiffs are also not entitled to monetary damages under the TIAA.

■ The court finds that the plain language of the TIAA requires an aggrieved party to give notice to an allegedly offending party as a precondition to seeking injunctive relief. Section 13–11a–4(5) of the TIAA states:

> No action for injunctive relief may be brought for a violation of this chapter unless the complaining person first gives notice of the alleged violation to the prospective defendant and provides the prospective defendant an opportunity to promulgate a correction notice by the same media as the allegedly violating advertisement.

The court further finds that Plaintiffs have failed to allege facts that would satisfy this precondition. The court rejects Plaintiffs' assertion that their allegations of having previously informed Amway of the rumors during the 1980s and 90s are sufficient to meet the TIAA's notice requirement. To the contrary, the statute states that a potential plaintiff must give notice of the "alleged violation," not of any previous violation. Furthermore, the court refuses to read into the TIAA a "futility exception." Thus, because Plaintiffs did not allege that they gave the required notice, Plaintiffs are not entitled to injunctive relief under the TIAA.

■ The next question is whether Plaintiffs may maintain an action for damages under the TIAA even though Plaintiffs cannot maintain one for injunctive relief under that Act. The court finds that they may not. Under the TIAA, a plaintiff must first give the required notice to entitle it to injunctive relief before that plaintiff may sue for damages.

■ First, a statute must be construed in a reasonable manner which avoids inconsistencies. Plaintiffs' proposed construction of the TIAA, however, would lead to a troubling inconsistency between sections 13–11a–4(2)(a) and 13–11a–4(5). Under section 13–11a–4(2)(a), if a court finds that a defendant is violating or has violated the TIAA, the court is required, by the word "shall," to enjoin the defendant from further violations.[6] However, under section 13–11a–4(5), a court cannot grant injunctive relief to an aggrieved party unless that party first gave notice of the alleged violation to the other party.[7] Accordingly, if a court allowed a plaintiff to sue for damages when that plaintiff had not given the required notice entitling it to injunctive relief, the court would find itself between contradictory statutory mandates. On one hand, section 13–11a–4(2)(a) would require

---

5. Defendants also ask the court to dismiss Plaintiffs' TIAA claim because Defendants have already issued a correction notice. The court does not address this argument given the court's ruling and because it deals with facts outside of the complaint.

6. Utah Code Ann. § 13–11a–4(2)(a) states:
Any person or the state may maintain an action to enjoin a continuance of any act in violation of this chapter and, if injured by the act, for the recovery of damages. If, in such action, the court finds that the defendant is violating or has violated any of the provisions of this chapter, it *shall* enjoin the defendant from continuance of the violation.
(Emphasis added)

7. Utah Code Ann. § 13–11a–4(5) states: "No action for injunctive relief may be brought for a violation of this chapter unless the complaining person first gives notice of the alleged violation to the prospective defendant...."

the court to issue an injunction if there had been a violation of the statute. On the other hand, under section 13–11a–4(5), the plaintiff would not be entitled to an injunction because no notice was given. Construing the TIAA as requiring an aggrieved party to give the notice entitling it to injunctive relief as a precondition to a suit for damages avoids this inconsistency.

■ Second, a statute must be construed in a manner which renders all parts of it relevant and meaningful. However, Plaintiffs' proposed construction of the TIAA would render meaningless the requirement in section 13–11a–4(5) that an aggrieved party give notice to the other party of the alleged violation before the aggrieved party is entitled to injunctive relief. If a court allowed a plaintiff who had not given the required notice under section 13–11a–4(5), entitling them to injunctive relief, to sue for damages only, the court would still be obligated to grant an injunction by the mandatory language in section 13–11a–4(2)(a). Thus, a plaintiff seeking injunctive relief who had not given the required notice could simply skirt that requirement and receive an injunction by suing for damages. By interpreting the TIAA as requiring an aggrieved party to give the notice entitling it to injunctive relief as a precondition to a suit for damages ensures the application of the notice requirement in section 13–11a–4(5) and prevents a plaintiff from sidestepping that requirement.

■ Third, the plain language of section 13–11a–4(5) requires an aggrieved party to give notice before filing any lawsuit under the TIAA. This provision states: "If a prospective defendant does not promulgate a correction notice within ten days of receipt of the notice, the complaining person may file a lawsuit under this chapter." Accordingly, the preconditions to any lawsuit under the TIAA are that (1) the prospective defendant receive notice from the aggrieved party; and (2) the prospective defendant not issue a correction within ten days after receiving that notice. An aggrieved party may not file any suit, for injunctive relief or damages, as long as it does not give notice to the allegedly violating party, because it is only by giving notice that the ten-day time limit begins to

run. This makes sense; if it were otherwise, a plaintiff could refuse to give notice, allow damages to compound, and then sue.

In sum, because Plaintiffs did not allege that they gave notice to Defendants of the allegedly defamatory statements, Plaintiffs are not entitled to seek either injunctive relief or damages under the TIAA and that claim must be dismissed.

## C. Tortious Interference with Business Relationships

Plaintiffs claim that Defendants' defamatory rumors tortiously interfered with Plaintiffs' existing and potential business relationships. Defendants ask the court to dismiss Plaintiffs' claim because Plaintiffs failed to identify in their complaint "a specific, ongoing relationship that was interfered with or a specific prospective relationship that failed to materialize." Plaintiffs argue that Utah law does not require them to specifically identify existing or potential business relationships in the complaint.

■ Under Utah law, the tort of intentional interference with economic relations "protects both existing contractual relationships and prospective relationships of economic advantage not yet reduced to a formal contract." *St. Benedict's Dev. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991). "[T]he archetypical injury this cause of action was devised to remedy" is "[d]riving away an individual's existing or potential customers." *Leigh Furniture & Carpet v. Isom*, 657 P.2d 293, 306 (Utah 1982). To maintain a claim of intentional interference with economic relations, a plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff. *Id.* at 304.

■ To sufficiently plead the first element of a claim for interference with contractual relations, a plaintiff cannot rest on conclusory allegations that it has existing or potential economic relations. The element requires a plaintiff to allege facts showing either an existing contract or business relationship with a third party, or a potential

contract or business opportunity with a third party or an identifiable class of third persons. *See St. Benedict's,* 811 P.2d at 201 (upholding a trial court's dismissal of a claim for interference with present contractual relations because: "There [was] no allegation in the complaint that any existing sublease between the development company and its tenants was breached or that the performance under any of those subleases was in any way impaired by Defendants' actions.").

The court agrees with Defendants that Plaintiffs have failed to allege any facts supporting the first element of interference with business relations. Accordingly, the court will dismiss that count and grant Plaintiffs fifteen days within which to amend that count of the second amended complaint.

### D. *Dismissal of the John Doe Defendants*

After reviewing the arguments of counsel, the court has determined that defendant Amway's motion to dismiss the John Doe Defendants is premature. After further discovery has been completed, Amway may renew its motion.

### IV. *ORDER*

Accordingly, based on the foregoing and good cause appearing, IT IS HEREBY ORDERED that:

1. Plaintiffs' second cause of action, for common-law unfair competition, in the second amended complaint is dismissed.

2. Plaintiffs' third cause of action, for violation of the Utah Truth in Advertising Act, in the second amended complaint is dismissed.

3. Plaintiffs' fifth cause of action, for tortious interference with business relationships, in the second amended complaint is dismissed with leave to amend that count within fifteen days of the date of this order.

4. Defendant Amway's motion to dismiss the John Doe Defendants 1–5 is denied.